DR. MARK MEYERS, M.D., Plaintiff-Appellant, *v.* ILLINOIS DEPART-
MENT OF PUBLIC AID *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—1828

Opinion filed April 29, 1983.

Harold G. Shapiro, of David Blumenfeld, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Ellen P. Brewin, Special Assistant Attorney General, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:
Plaintiff, Dr. Mark Meyers, filed a complaint in the circuit court

of Cook County for judicial review of the administrative action of the Illinois Department of Public Aid (IDPA) terminating his eligibility as a vendor of medical services and determining that it was entitled to recoup $55,531.66 in payments made to plaintiff for medical services provided to Medicaid recipients. The circuit court affirmed in part, but reversed recoupment of certain discrepancies occurring from July through December 1975, and reduced the recovery to $26,296.29.

On appeal, plaintiff argues that (1) the IDPA decision was against the manifest weight of the evidence, (2) he was denied due process because the Department failed to give him notice of its documentation standards, and (3) the court erred by refusing to remand plaintiff's case back to the IDPA for a redetermination of his termination as a provider.

The pertinent facts follow. In May of 1978, the Department audited Meyers' billings for medical services allegedly rendered to public aid patients from July 1975 through December 1976. This audit, and subsequent re-audits conducted in May 1980 were based upon 1,010 billing procedure discrepancies which included "A," "B," "C," "G," "GP" and "K" type discrepancies, and which, when extrapolated, reached a total of $58,866.62. In December 1979, the Department notified Meyers of its intention to terminate his eligibility as a vendor of goods or services to recipients under the Medicaid program, and to recover the $58,866.62 in payments made to him for medical services rendered, pursuant to section 4.41 and 4.51 of the Rules for Department Actions Against Medical Vendors. These rules provided that the Department may recover money improperly or erroneously paid to a vendor who has knowingly made, or caused to be made, any false statement or representation of a material fact in connection with the administration of the program.

Hearings commenced on June 7, 1980. The Department called two auditors, their supervisor, and a Department statistician as witnesses.

Taras Fylypowycz, an IDPA auditor, testified that he audited medical records by comparing them to the billing made by a doctor in order to determine if they were in compliance with Department policy. He stated that a "C" type discrepancy is determined by comparing the documentation in the doctor's patient charts with the criteria for the particular procedure code used by the doctor for billing purposes. He defined a procedure code as a numerical identification for a type of visit which a doctor uses when he bills the Department for the services he had rendered.

The three sources of these procedure codes are the billing form, DPA-132, the Current Procedure and Terminology, Second Edition

(CPT #2d), and the Handbook for Physicians (Handbook) promulgated by the Department.

Fylypowycz stated that the audit period for the plaintiff extended from July 1975 to December 1976. In the discrepant billings, the auditors found that where Meyers had billed the comprehensive exam codes 90020 and 90070/80, the proper codes would have been 90010 for new patients and 90040 for established patients.

The auditors applied the CPT 2d for services rendered prior to January 1, 1976, and the Physicians Handbook for services rendered thereafter. On cross-examination he stated that there was no listing of any documentational requirements for 1975 and that to his knowledge none had ever been sent to physicians.

Auditing supervisor Matthew Bachmann testified that the Handbook went into effect January 1, 1976; that it was mailed out to vendors in January, February, and March of 1976; and that the auditors were to apply the Handbook as of the beginning of January 1976.

Plaintiff testified on his own behalf that he was the only physician at the clinic and that he did not fill in or decide which procedure code would be filled. He stated that a receptionist filled in the code before the doctor had even seen the patient or documented any medical information, and that it was clinic policy to automatically bill all first visits as 90020 and all second visits as 90070.

He admitted that generally even a physician cannot determine how extensive an examination will be before he sees the patient. Although Meyers stated that he started to fill in the codes once he received the Handbook in 1976, from April 1976 to December 1976 over 40% of the billings contained "C" discrepancies. On the last day of the hearing, plaintiff supplied missing records and, following a re-audit, the recoupment amount was adjusted to $55,531.66. At the conclusion of this hearing, the hearing officer terminated plaintiff's eligibility to participate in the Medicaid program and authorized recoupment of $55,531.66.

Plaintiff filed a complaint in administrative review in the circuit court of Cook County. After hearing oral arguments, the trial court affirmed recoupment of all overpayments resulting from discrepancies other than type "C," affirmed recoupment of all overpayments due to "C" discrepancies in 1976, and reversed recoupment of "C" discrepancies from July 1975 to December 1975.

Plaintiff filed a motion for reconsideration requesting that the case be remanded back to the Department for a redetermination of the termination issue. The trial court denied this motion and entered the final recoupment amount of $26,296.29 on June 23, 1981. Plaintiff

appeals.

We note here for clarity that the issues on appeal concern only the "C" discrepancies encompassing misuse of procedure codes.

Plaintiff does not contest either the Department's sampling method or its use of an extrapolation to determine the final recoupment amount nor any of the A, B, G, GP or K discrepancies on appeal.

OPINION

We first address plaintiff's contention that the IDPA decision was against the manifest weight of the evidence.

■ It is well settled that under the Administrative Review Act, the findings and conclusions of the agency on questions of fact are "prima facie true and correct" (Ill. Rev. Stat. 1979, ch. 110, par. 274), now codified as section 3—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 3—110) and must be affirmed unless against the manifest weight of the evidence. (*Cybularz v. Quern* (1981), 96 Ill. App. 3d 845, 422 N.E.2d 123.) These provisions of the Administrative Review Act have been construed to mean that courts are not authorized to reweigh evidence or to make an independent determination of facts. (*Menning v. Department of Registration & Education* (1958), 14 Ill. 2d 553, 153 N.E.2d 52.) Thus, in order to reach the conclusion that a particular finding is against the manifest weight of the evidence, this court must be satisfied that an opposite conclusion is clearly evident. (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) We are not so satisfied.

The State of Illinois requires that physicians participating in its Medicaid program maintain detailed records of the nature and scope of the health care they provide to patients receiving assistance under the Illinois Public Aid Code. (Ill. Rev. Stat. 1979, ch. 23, par. 5—5.) The Department of Public Aid conducts post-payment audits by examining randomly selected records for discrepancies in order to recoup any excess compensation paid because of improper billing practices. Discrepancies exist when no medical records are available to verify the submitted bills or when a billing code has been misused. *Illinois Physicians Union v. Miller* (7th Cir. 1982), 675 F.2d 151.

In the present case, plaintiff himself admitted that a receptionist filled in the procedure code on the billing form prior to any patient examination as a matter of office policy, and that he signed and submitted such forms without further review. Although plaintiff contends that he did not receive notice of the Department's documentation re-

quirements and that the requirements were applied in an arbitrary manner, a thorough examination of the record reveals an ample basis from which the opposite conclusion might be reached.

Since we find evidentiary support in the trial court's affirmation of the Department's decision to terminate plaintiff and to recoup overpayments due to both 1976 "C" discrepancies as well as all 1975 and 1976 overpayments resulting from A, B, G, GP, and K discrepancies, plaintiff has not satisfactorily demonstrated that the opposite conclusion is "clearly evident." Accordingly, we find that the findings are not against the manifest weight of the evidence.

Defendant also argues that he was denied due process because the Department failed to give him notice of its documentation standards.

It is undisputed that the 1975 findings are not at issue, and plaintiff admits that he possessed the Handbook from at least April 1976 to December 1976. Thus, the only audit period at issue on appeal extends from January 1976 through April 1976.

With respect to this time period, plaintiff premises his due process argument upon his own testimony that he received the Handbook in April 1976, from a man at the clinic who received all of his business mail and forwarded it to him once a week, and therefore he lacked notice of the documentation standards.

■ We find that this argument lacks merit. Even assuming, *arguendo*, that plaintiff did not receive the Handbook until a late mailing in April 1976, there is no dispute that he did possess the CPT 2d which was in effect in 1975 and 1976. We have examined the record and the CPT 2d, while not as detailed as the successor Handbook, adequately sets forth the procedure code and a description of the documentation required for each code.[1] Moreover, plaintiff himself admitted that a receptionist filled in the procedure code by following the clinic policy of billing all first visits as "90020" and subsequent visits as "90070" and he testified that he was not only aware of this practice but also signed the billing forms without adjusting the code to reflect the actual extent of the exam.

In *Illinois Physicians Union v. Miller* (7th Cir. 1982), 675 F.2d 151, 158, the court stated that "we do not believe it unreasonable to require a physician participating in publicly funded welfare programs to be thoroughly familiar with the Department's rules and regulations. Thorough knowledge is demanded on the part of the physician,

---

[1]*E.g.*, the CPT 2d requires: "90040 Visit office established patient, brief examination, evaluation and/or treatment, same or new illness" in contrast to "90070 Visit office established patient, extended, re-examination or re-evaluation."

not only for conducting an audit, but for submitting proper bills in the first place."

Accordingly, we find that defendant was not denied due process and had adequate notice of the documentation standards promulgated by the Department.

Lastly, plaintiff argues that the trial court erred in its decision not to remand the case back to the Department for a redetermination of his eligibility to participate as a Medicaid vendor since his termination was based on "C" discrepancies and the trial court reversed the 1975 "C" recoupments.

In the present case, the termination was based solely on the "C" type of discrepancy. However, the record reveals that even after the partial reversal of the 1975 "C" recoupments, over 40% of the billings sampled were "C" discrepancies which occurred from April to December 1976 and which totalled almost $26,000, and there is ample evidentiary support for the trial court's denial of remandment.

Consequently, we find that the trial court had a proper basis for its denial of remandment for a redetermination of plaintiff's eligibility.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.