DOMINIC BOFFA, Plaintiff-Appellee, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 87—614

Opinion filed March 16, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and David Adler and James C. O'Connell, Special Assistant Attorneys General, of Chicago, of counsel), for appellants.

Harold G. Shapiro, of David Blumenfeld, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendants appeal the circuit court's reversal of a decision by the Illinois Department of Public Aid (Department) on administrative review, which also required the Department to refund $50,776 to a vendor dentist. They seek review of whether the circuit court: (1) erred in determining plaintiff did not impermissibly alter his records to reflect documentation for reimbursable prophylaxis rather than nonreimbursable oral hygiene instruction; and (2) lacked jurisdiction on administrative review to enter a money judgment against the Department by ordering it to repay funds already recouped.

In early 1981, the Department requested plaintiff, a participating vendor of dental services in the Illinois Medical Assistance program, to produce patient records for the period July 1978 through December 1979. Plaintiff responded that these records could not then be produced. In January 1983, the Department audited plaintiff's records for the period January 1981 through August 1981. That audit disclosed that plaintiff's patient records only documented nonreimbursable oral hygiene instructions, although plaintiff had billed for prophylaxis services, a mechanical cleaning of teeth to remove plaque and tartar deposits. Plaintiff maintained his patient records on preprinted forms. The service actually rendered to the patient was to be indicted by placing a check mark next to the service printed on the form. This printed list of various services included both oral hygiene instruction and prophylaxis, among others. Prophylaxis services, if rendered, could be indicated by placing a check mark next to the entry "PX" and code 111 (the appropriate code for prophylaxis for patients over age 15; code 110 applied to younger patients). Plaintiff's 1981 records left unchecked "PX" 110 or 111; instead the records showed check marks next to the preprinted entry "ORAL HYGIENE INST." (code 133) with the word "Fluoride" written below. The Department recouped payment made to plaintiff for prophylaxis during the 1981 audited period, based upon his billing practices, and explained to plaintiff that his

records insufficiently documented that treatment so as to qualify for such payments.

On October 3, 1983, the Department sent plaintiff a notice of intention to recover $156,742 improperly paid him for the 1978-79 period and to terminate him as a vendor for failure to produce for audit charges for 947 patient services. On October 14, 1983, plaintiff requested a hearing, which began on November 4, 1983 and ended on October 29, 1984. Plaintiff only then provided the previously missing 1978 and 1979 patient records to Department auditors in December 1983.

When Department auditors examined plaintiff's records on December 19 and 20, 1983, they found that preprinted entries for "PX" and code 111 had been scratched out, a check mark and code numbers 110 or 111 placed before the preprinted entry for "ORAL HYGIENE INST." also scratched out, while a handwritten word "Prophy." was added following the oral hygiene entry. The Department's senior auditor became suspicious, since he had worked on the 1981 audit, and he discussed the situation with his superior, who sent a unit supervisor to investigate. The unit supervisor informed plaintiff that the Department would seek his termination as a vendor if he lied to them but not if there was a reasonable explanation for the record alterations. Plaintiff then asked to consult his attorney.

The auditing unit supervisor met plaintiff in the attorney's office, where plaintiff explained he "was attempting to change the records to reflect the reality of the situation." The supervisor believed plaintiff had recently altered his records, although he had no direct knowledge of when the records had been changed. These record alterations were made during the autumn of 1983, according to plaintiff's counsel. The assistant manager of the Department's audit section instructed the auditors to disallow the prophylaxis documentation as insufficient, as approved by his superior.

The form dentists use to request reimbursement, DPA 134, include a certification statement to be signed by the dentist attesting that "records necessary to fully disclose the nature and extent of services provided are maintained and will be made available upon request of State and Federal officials." The back of the form lists the appropriate procedure code numbers.

The auditors found that the greatest instances of discrepancy were 815 record alterations. Other discrepancies included 20 occurrence limits violations, four overpayments, four missing X rays, one misuse of procedure code, one instance of failure to locate a patient record and two cases of failure to find a service documented in a patient record.

Using extrapolation techniques based on the size of the sample (375 items) and the size of the universe of items in the time period involved (2253 items), the Department calculated a total recoupment of $53,427.10 due.

On January 9, 1984, the Department moved to withdraw the termination charges, strike the original statement of grounds and reduce the recoupment amount to $53,440.10, which the hearing officer permitted. Department officials testifying at the administrative hearing were uncertain if any previously announced policy barred changing patient record entries subsequent to treatment; however, the two auditors found the record alterations in this case very unusual. Plaintiff did not testify at the hearing and contested only those discrepancies involving alteration of records. On November 28, 1984, the hearing officer found that: plaintiff admitted altering his records and inferred this was done solely to avoid a recoupment assessment; the records lacked a contemporary assurance of reliability; it was inappropriate to change such records after an audit request; such a change represented "a form of concealment and deception" and thus the records failed to support the payments made to plaintiff; and $53,427.10 should be recouped.

On January 2, 1985, defendant Michael Tristano, Department executive deputy director, notified plaintiff that he adopted the hearing officer's finding of facts, conclusions and recommendation as the Department's final decision. On February 1, 1985, plaintiff filed an administrative review complaint against defendants Department and Tristano, appealing the decision and requesting recoupment be stayed pending the decision of the circuit court. On June 18, 1985, defendants filed their answer, including a vendor patient profile for the period July 1978 through December 1979 and transcripts of the hearings.

On January 29, 1987, at a hearing before the circuit court, plaintiff contended that: no specific standard for documenting prophylaxis existed; no question arose concerning the actual services he had rendered; and he had merely prudently reviewed his records and adjusted them. Defendants maintained that allowing plaintiff to alter his records, after a previous audit resulted in a recoupment order for the same record deficiencies, would open the door to fraud, even though the Department had not alleged fraud, and that plaintiff clearly lacked adequate records to support his billed-for prophylaxis services.

The circuit court found that, although the Department had the right to request proper documentation, plaintiff had supplied such documentation and the Department had failed to establish any impropriety therein. The court further found that: the hearing officer had im-

properly shifted the burden of proof to plaintiff; there was no indication plaintiff's records incorrectly reflected amounts due him; concealment or deception had not been established; and an intent to deceive could not be inferred from mere alteration of records alone. The circuit court reversed the Department's decision concerning the 815 instances of billing for prophylaxis and required the Department to repay the $50,776 it had recouped for those services. Defendants appeal.

I

Defendants first identify error in the circuit court's failure to recognize that the Department could consider it impermissible for plaintiff to alter his records with an audit pending. Defendants assert that plaintiff's alteration of records, after another audit resulted in recoupment, which had been based on disallowing prophylaxis documentation, permitted the hearing officer to reasonably infer that the records were changed solely to avoid further recoupment. Defendants conclude it was inherently improper for plaintiff to so alter his records and to fail voluntarily to inform the auditors that he had changed them; condoning such a practice would open the door to fraud. The circuit court erred, they insist, in presuming that the Department had to prove, as an indispensable prerequisite to sanctioning plaintiff, that the altered records falsely reflected services not performed, but for which plaintiff had billed and had been paid.

■ Section 5—5 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 5—5), in effect throughout the billing periods, provides:

> "All dispensers of medical services shall be required to maintain and retain business and professional records sufficient to fully and accurately document the nature, scope, details and receipt of the health care provided to persons eligible for medical assistance under this Code, in accordance with regulations promulgated by the Illinois Department."

Even without further regulations by the Department, plaintiff thus had constructive notice of his need to meet minimal professional record-keeping standards. (*Agustin v. Quern* (7th Cir. 1979), 611 F.2d 206, 209.) This section and the certification language on form DPA 134 make it obvious that plaintiff was required to keep accurate records when participating in Medicaid programs. (See *People v. Herbert* (1982), 108 Ill. App. 3d 143, 147, 438 N.E.2d 1255, *cert. denied* (1983), 459 U.S. 1204, 75 L. Ed. 2d 436, 103 S. Ct. 1190.) The principal purpose for requiring vendors to keep accurate records in public aid cases is to enable the Department to monitor the operation of the aid pro-

gram and thereby seek to maintain its integrity, rather than to detect and administer sanctions for fraud or criminal acts. See *People v. Herbert*, 108 Ill. App. 3d at 148.

■ It must be emphasized that this was not a case in which a vendor merely updated or supplemented a number of his records after the services were first performed, but instead involved unusual and massive record alterations, coming four years after the services were rendered, in which records originally documenting nonreimbursable benefits were altered to reflect an entirely distinctive treatment for which reimbursement was authorized. Further, the alterations came after an earlier audit of plaintiff's more recent 1981 records resulted in payment disallowance. The Department justifiably could view such retrospective record alteration, under the facts of this case, as an invitation to fraud and deception, as well as a negation of requirements that reasonably contemporaneous entry of records follow the rendering of services. Therefore, whether the plaintiff's emendations were a true reflection of actual treatment given, or not, his unauthorized and surreptitious alteration of records, coming after a request for an audit, constituted sufficient grounds for Department action. The Department's finding here, that plaintiff's records did not validate his billings and payments before they were improperly altered, is supported by the record.

■ Findings and conclusions of an administrative agency on factual questions are *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) A court cannot reweigh the evidence; the agency's finding must be affirmed unless against the manifest weight of the evidence. (*Smith v. Department of Public Aid* (1986), 150 Ill. App. 3d 584, 586-87, 502 N.E.2d 42; *Meyers v. Department of Public Aid* (1983), 114 Ill. App. 3d 288, 291, 448 N.E.2d 1176.) For a finding to be against the manifest weight of the evidence an opposite conclusion must be clearly evident. (*Kelley v. Department of Labor* (1987), 160 Ill. App. 3d 958, 962, 513 N.E.2d 988; *Smith v. Department of Public Aid*, 150 Ill. App. 3d at 587.) No such opposite conclusion is evident in the present case.

■ Plaintiff asserts that Illinois administrative agencies can set standards only by rulemaking, relying on the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1983, ch. 127, par. 1004.02), effective July 1, 1980, which states that rules implementing discretionary powers of an agency shall include the standards by which the agency exercises such power to inform fully those persons affected. Administrative agencies, however, may establish standards of conduct in applying statutes by either rulemaking or adjudication. The choice lies

within the agency's informed discretion. (*Securities & Exchange Comm'n v. Chenery Corp.* (1947), 332 U.S. 194, 202-03, 91 L. Ed. 1995, 2002, 67 S. Ct. 1575, 1580; see *United States v. Markgraf* (7th Cir. 1984), 736 F.2d 1179, 1185, *cert. dismissed* (1985), 469 U.S. 1199, 84 L. Ed. 2d 308, 105 S. Ct. 1154; *City of Chicago v. Illinois Commerce Comm'n* (1985), 133 Ill. App. 3d 435, 447-48, 478 N.E.2d 1369.) Specific standards are desirable but not required to justify an agency's finding of a violation of statutory provisions (*Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 335-36, 328 N.E.2d 5; see *W. F. Hall Printing Co. v. Environmental Protection Agency* (1973), 16 Ill. App. 3d 864, 867, 306 N.E.2d 595; see also *Joyce v. City of Chicago* (1905), 216 Ill. 466, 473, 75 N.E. 184), even where the question may be one of first impression in an adjudicative context (*NLRB v. American Can Co.* (10th Cir. 1981), 658 F.2d 746, 758) and, where appropriate, an agency may announce new principles of policies without resorting to formal rulemaking (*NLRB v. Bell Aerospace Co.* (1974), 416 U.S. 267, 294, 40 L. Ed. 2d 134, 154, 94 S. Ct. 1757, 1771). Plaintiff's attempt to distinguish such authorities on the bases of the expertise or functions of the agencies involved does not persuade.

■ Here, the requirement that vendors keep accurate records to justify payment for health care provided was not a new rule or principle just announced by the Department, but was embodied in section 5—5 of the Public Aid Code and DPA 134, the request form for dental services reimbursement. Nevertheless, as plaintiff told a Department superior, he had altered his records; the superior believed the alteration was recent. It was not unreasonable for the hearing officer to have concluded that such changes were made primarily to avoid recoupment. Plaintiff offered no testimony to rebut such an inference, nor provided any explanation of why the incorrect entries originally were made. Plaintiff did not ask the Department for permission to correct his records; he altered them without first informing the Department, and after an audit of the record had been requested. Considering section 5—5 of the Public Aid Code and the certification block of the report form, plaintiff should have been aware of the requirement for accurate patient reports. The Department was entitled to draw reasonable inferences of impropriety and take appropriate remedial measures.

Plaintiff's reliance on *Tanquilut v. Department of Public Aid* (1979), 78 Ill. App. 3d 55, 61, 396 N.E.2d 1126, and *Cybularz v. Quern* (1981), 96 Ill. App. 3d 845, 849-50, 422 N.E.2d 123, is misplaced. In each case, the evidence was clearly insufficient to support Department action. Rather, this case is analogous to *Meyers v. Department of Pub-*

*lic Aid*, 114 Ill. App. 3d at 290-92, where plaintiff professed ignorance of the correct billing codes but possessed materials that provided that information. Altering records after an initial audit has been held supportive of a finding of misconduct by the Department. (*Agustin v. Quern*, 611 F.2d at 207-08.) Health care professionals must be held responsible for proving entitlement to welfare monies. (*Illinois Physicians Union v. Miller* (7th Cir. 1982), 675 F.2d 151, 154.) An agency is authorized to take such action as necessary to prevent circumvention of its rules. *Mattes v. United States* (7th Cir. 1983), 721 F.2d 1125, 1131-32.

Accordingly, the Department's decision in the case before us was not an abuse of discretion. An opposite conclusion is not plainly evident, and the circuit court's reversal of that decision must itself be reversed.

## II

■ Defendants also assert that the circuit court could not enter a money judgment against the Department because it has only statutory authority acting on administrative review. Plaintiff responds that his action is not an initial claim, since receiving such funds would merely restore his position to that prior to the Department action.

In *Campbell v. Department of Public Aid* (1975), 61 Ill. 2d 1, 5-6, 329 N.E.2d 225, our supreme court held that in an administrative review proceeding the appellate court could not authorize the circuit court to enter a money judgment against the State, although it could find plaintiff was entitled to back payments which had been withheld. That decision controls the case at bar. (See *First Finance Co. v. Pellum* (1975), 62 Ill. 2d 86, 91-92, 338 N.E.2d 876; *Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90, 99, 337 N.E.2d 305.) Section 3—111(a)(8) of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—111(a)(8)) gives the circuit court power to enter a money judgment only when affirming or partially affirming an administrative decision.

For the foregoing reasons, the judgment of the circuit court reversing the Department's decision must be reversed and remanded to the circuit court with directions to affirm the Department's determination in this case and to restore the recoupment order entered by the Department.

Reversed and remanded with directions.

STAMOS and BILANDIC, JJ., concur.