GREGORY THUROW, Plaintiff-Appellant, v. THE POLICE PENSION BOARD OF THE VILLAGE OF FOX LAKE *et al.*, Defendants-Appellees.

Second District   No. 2—88—0553

Opinion filed March 16, 1989.

Robert E. Lessman, of Hall, Holmberg, Roach, Johnston, Fisher & Lessman, of Waukegan, and Marshall P. Patke, of Clark, Pfetzer & Patke, of Lake Forest, for appellant.

William G. Rosing and Suzanne A. Lindsay, both of Rosing, Applehans & Smith, Ltd., of Waukegan, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Gregory Thurow, appeals from an order of the circuit court of Lake County which, on administrative review, affirmed the decision of the Village of Fox Lake Police Pension Board (Board). The Board denied plaintiff's application for a duty-related disability pension under section 3—114.1 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1). We reverse and remand.

Plaintiff raises four assignments of error on appeal: (1) whether the Board erroneously relied upon medical reports of examinations taken long after plaintiff applied for his pension; (2) whether the Board should not have considered any evidence regarding the source of plaintiff's injury because such evidence was presented in plaintiff's claim for unemployment compensation; (3) whether plaintiff was judged fairly and with impartiality at the hearing given the fact that the Board's attorney actively participated in the proceedings; and (4) whether the Board's decision that a light-duty position was available was against the manifest weight of the evidence.

Plaintiff began his employment with the Fox Lake police department in February 1983, and he obtained the rank of patrolman in February 1984 after he successfully completed his one-year probationary period. On April 16, 1984, plaintiff responded to a domestic disturbance call. During the call, a struggle occurred and plaintiff was injured, although he did not notice his lower back injury until the following day. He continued to work for approximately two weeks, until such time as the pain forced him to leave his shift early and return home. Plaintiff stayed at home from May 3, 1984, to May 16, 1984. He returned to work on May 17, 1984, and performed light duties per his physician's advice. Around July 1, 1984, plaintiff returned to his regular duties as a patrolman. He continued this position until February 22, 1985, when he again left work early due to his lower back pain. Plaintiff was placed on temporary total disability from February 22, 1984, until July 4, 1986, receiving workers' compensation benefits. Plaintiff visited several doctors and was hospitalized for tests during this period.

On November 5, 1985, plaintiff applied for a duty-related disability pension. Plaintiff submitted reports of physical examinations to the Board, and a hearing was held on March 4, 1987. Plaintiff testified at the hearing that he was presently working as a salesman and security guard for Collins Investigations, but that he was looking for a new job in the insurance investigation field. Plaintiff also stated that he played golf two or three times per month in the summer.

In a letter dated June 26, 1987, the Board notified plaintiff that

his request for a disability pension was denied. The Board listed four reasons for the denial: (1) the lack of specific medical testimony concerning plaintiff's disability; (2) plaintiff's current job situation and the fact that he does play golf indicate that he could still hold a job with the police department; (3) plaintiff's injury appears to be a pre-existing condition; and (4) the police report written after the domestic disturbance incident did not state any injuries to the officers involved.

On July 24, 1987, plaintiff appealed the Board's decision to the circuit court of Lake County under the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*). On May 10, 1988, the trial judge entered an order affirming the Board's decision. The judge noted that he was unable to find that the Board's decision was against the manifest weight of the evidence. This appeal followed.

■■■■ Initially, we note that the function of a court in reviewing a decision of an administrative agency is not to reweigh the evidence but instead to determine whether the agency's decision is against the manifest weight of the evidence. (*Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372-73; *Boffa v. Department of Public Aid* (1988), 168 Ill. App. 3d 139, 145.) Under section 3—110 of the Administrative Review Law, the findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct and must be affirmed unless they are contrary to the manifest weight of the evidence. (*Fadler v. State Board of Education* (1987), 153 Ill. App. 3d 1024, 1026; *Smith v. Department of Public Aid* (1986), 150 Ill. App. 3d 584, 586.) An administrative decision is not contrary to the manifest weight of the evidence merely because an opposite conclusion is reasonable or if the reviewing court might have ruled differently. (*Fadler*, 153 Ill. App. 3d at 1026; *Collura*, 135 Ill. App. 3d at 838.) However, a court of review should not hesitate to intervene when an administrative order is against the manifest weight of the evidence. *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 497; *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 207.

■■ Duty-related disability pensions for police officers are provided for in section 3—114.1 of the Code. Section 3—114.1 provides in part:

"If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension of 65% of

the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement." (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1.)

Thus, plaintiff was required to show that he was injured while performing a duty, that the injury caused him to become disabled, and that the disability made it necessary for him to retire from the police force.

A total of seven physicians examined Officer Thurow at various times since the date of his injury. The Board appointed three of the seven physicians to examine plaintiff. These opinions were inconclusive as to whether Officer Thurow could resume his duties as a police officer. Dr. Matz stated in his report:

> "Mr. Thurow at this date in time does not manifest any specific neurologic derangement. It would appear that his request for disability is related to his ongoing subjective low back complaints. *** I cannot state with any definitive certainty that a condition of arthritis about the lower back would prohibit this gentleman from returning to work as a police officer."

Dr. Apfelbach stated:

> "It is my opinion that this patient cannot perform all the duties of a police officer. I feel that he cannot be involved in work which involves restraining individuals or which involves lifting more than 30 lbs. on a repetitive basis. I feel that driving a squad car and getting in and out of the squad car repetitively is a job of which he is marginably [sic] capable."

The third appointed physician, Dr. Loughran, stated:

> "I do not find a great deal of neurological deficit to account for his severe symptoms.
>
> However, he does have x-ray findings of degenerative disc disease and with two previous disc injections, I would recommend he be restricted to a lighter type of work."

Four other physicians examined plaintiff, and two of their reports were admitted into evidence at the Pension Board hearing. The Board received the recommendations of Dr. Stone and Dr. Pawl. Dr. Stone stated:

> "Diagnosis is acute injury to the lumbar spine causing disc involvement with nerve root irritation. *** Mr. Thurow will not be able to return to his employment on a permanent basis."

It was the opinion of Dr. Pawl that:

> "Mr. Thurow will not be able to carry out occupational activities that require repeated bending, lifting or twisting, or lifting more than 25 pounds on a regular basis or up to 50 pounds oc-

casionally. This meets the Southern California guidelines of medium activity level. Mr. Thurow is currently capable of meeting that activity level, and is released to seek occupational activities within that framework."

The only other evidence that the Board heard was the testimony of Officer Thurow. Officer Thurow stated that he was presently employed as a part-time security guard and salesman and that it was possible for him to hold a full-time position. He testified that he was currently looking for a full-time position as an insurance investigator. He further stated that he could perform light-duty work for the police department and that he enjoys playing golf in the summer.

■ Officer Thurow first contends that the Board erroneously relied on medical reports of doctors who examined plaintiff some 9 to 10 months after he filed the pension application. Plaintiff claims that *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, supports the proposition that the only pertinent evidence of plaintiff's fitness for duty are those examinations of plaintiff at or near the date he applied for a pension. In *Hahn*, the appellate court reversed the pension board's decision because it erroneously relied upon psychiatric reports of examinations taken long after plaintiff claimed he was mentally unfit for duty. The court noted that of the four psychiatrists who examined the police officer near the time of his resignation, three concluded he was unfit for duty. (*Hahn*, 138 Ill. App. 3d at 211.) Officer Thurow claims that the *Hahn* decision precludes the use of all of the appointed physicians' reports in determining whether he was entitled to a disability pension. He makes this claim even though both parties stipulated that these reports were competent evidence. It is also true that no objections were made as to the admissibility of the reports. We deem the issue waived because a question not raised in the trial court may not be raised for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500-01; *Bloom v. Guth* (1987), 164 Ill. App. 3d 475, 479.

■ Plaintiff next contends that the Board should not have considered any evidence concerning the source of plaintiff's injury because such evidence was already presented in his claim for unemployment compensation. Plaintiff notes that the Village of Fox Lake stipulated in the workers' compensation benefits settlement agreement that plaintiff was injured "while responding to a domestic call, was struck by the offender and fell on his back." Plaintiff claims that this stipulation is *res judicata* with respect to the cause of the injury. We agree that the settlement agreement may be *res judicata* as to causation but may not be *res judicata* as to the nature and extent of the disabil-

ity. (*Smith v. Industrial Comm'n* (1984), 125 Ill. App. 3d 999, 1003.) The Board claims that it did not relitigate the question of whether Officer Thurow's injury was job related. Indeed, the record reveals that the Board was simply concerned with the degree of Officer Thurow's disability. At no time did the Board conclude that plaintiff was not injured in the line of duty. The Board simply determined that, in spite of Officer Thurow's injury, there was a position available in the police department which would allow plaintiff to continue his employment as a police officer. It was necessary for the Board to consider the degree of plaintiff's disability in determining whether he should qualify for a duty-related disability pension.

The Board found, and the trial court agreed, that there were no reasons why plaintiff could not hold some position with the Fox Lake police department. This decision was based on plaintiff's current employment situation and his attempts to find work as an insurance investigator. These factors were proper considerations with respect to the degree of disability, and not as to whether plaintiff was injured in the line of duty. We therefore find plaintiff's *res judicata* argument to be inapplicable with respect to the Board's determination as to the severity of plaintiff's disability.

Plaintiff also argues that the Board did not act fairly and with impartiality with respect to plaintiff's application because the Board's attorney acted in a prosecutorial role and also participated in the judging of the merits of plaintiff's claim. Plaintiff cites *Phillips v. Board of Fire & Police Commissioners* (1974), 24 Ill. App. 3d 242, for the proposition that the Board cannot act as both the prosecutor and the judge in the same case. In *Phillips*, the Board conducted the prosecution and rendered an adverse decision to the plaintiff. (*Phillips*, 24 Ill. App. 3d at 243.) The appellate court held that the Board's decision was erroneous. The court noted that there can never be a merger of the prosecutorial and judicial functions in a court or a quasi-judicial proceeding. (*Phillips*, 24 Ill. App. 3d at 244.) Officer Thurow claims that *Phillips* supports his position that he was deprived of a fair hearing because the Board's attorney acted in a prosecutorial manner.

Plaintiff's contention is not supported by the record. Our review of the record indicates that plaintiff received a full and fair hearing. We find nothing unfair in having one attorney representing the Board, a second attorney conducting the examination of witnesses and the presentation of evidence, and a third attorney representing the police officer. There is no evidence to indicate that the Board's attorney participated in the examination of any witnesses or objected to the presentation of any evidence. His role was simply to advise the

Board on the law at all times during the hearing and subsequent to the hearing.

The Board is allowed to have counsel present both during and after a hearing. (*Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 279-80; *Westby v. Board of Fire & Police Commissioners* (1977), 48 Ill. App. 3d 388, 392.) In addition, the Board appointed an independent counsel to conduct the examination of witnesses and the presentation of evidence. This procedure was more likely to ensure plaintiff a fair and impartial hearing than to deprive him of due process. In sum, we reject plaintiff's contention that the Board's attorney made it impossible for the Board to conduct a fair and impartial hearing.

Officer Thurow's final contention is that the Board's decision was against the manifest weight of the evidence because the evidence showed that he was not capable of fully performing his duties as a police officer. In addition, he notes that there was no evidence presented at the pension hearing to indicate the availability of any light-duty positions in the department as determined by the Board. He thus concludes that he is caught in a "catch-22" position because both the police department and the Board are disclaiming any further responsibility to him. We agree that plaintiff is in a "catch-22" position.

■■ ■ We do not agree with the Board's determination that Officer Thurow's pension should be denied because he is presently employed and plays golf. The fact that plaintiff is presently employed as a security guard and salesman, coupled with the fact that he plays golf in the summer, is not indicative of whether he can perform the duties required of a police officer. Plaintiff did not claim, nor could he, that he is totally disabled such that it is necessary for him to retire from the police force. Instead, Officer Thurow asserts that he is disabled by his injuries such that he cannot perform the regular work of a police officer. He readily acknowledged that he was able to perform light-duty work. All of plaintiff's physicians stated that he could perform light-duty work. Plaintiff testified at the pension hearing that he was willing to work for the police department in a light-duty position. However, plaintiff notes that he was not offered a light-duty position. Thus, plaintiff concludes that such a position was not available to him and therefore he is entitled to a disability pension because he cannot perform the duties of a full-time patrolman. Whether or not a light-duty position with the police department is available has yet to be determined and is the nexus of disagreement between the parties.

As was previously mentioned, section 3—114.1 of the Code pro-

vides that a police officer will be entitled to a duty-related disability pension if the disability will "render necessary his or her suspension or retirement from the police service." (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1.) The Illinois Supreme Court has interpreted a similar provision providing for disability pensions for fire fighters in *Peterson v. Board of Trustees of the Firemen's Pension Fund* (1973), 54 Ill. 2d 260. In *Peterson*, the pension board denied the applicant's request for a line-of-duty disability pension because the applicant was able to perform other duties for the fire department. (*Peterson*, 54 Ill. 2d at 265.) The Board noted that there was a position open in the fire prevention bureau that could be performed by a person with Mr. Peterson's physical and mental capabilities. The Illinois Supreme Court affirmed the Board's decision, holding that a person is not entitled to a duty-related disability pension if he or she is capable of performing duties within the fire department, even if the duties were not those of a fire fighter. *Peterson*, 54 Ill. 2d at 263-65.

However, the *Peterson* court was concerned that a number of years had passed since the Board determined that there was a position open in the fire prevention bureau of the fire department. The supreme court determined that the case should be remanded to the circuit court to determine whether the same or a similar position existed. If the position was still available, then Peterson's pension application should have been denied. If such a position were not available to him, then he would be entitled to a pension. *Peterson*, 54 Ill. 2d at 265-66.

We find the holding in *Peterson* to be persuasive as to Officer Thurow's pension application. We can find nothing in the record to determine whether there are any light-duty positions available in the Fox Lake police department. Officer Thurow testified that he worked for six weeks in a light-duty position in the police department after he returned from his initial layoff. He also testified that he was willing to return to the police department to work in a similar position. However, he notes that he was never offered such a position, nor is he aware that any such position exists. Thus, in the absence of any evidence in the record to determine the availability of such a position, we are faced with the same situation as was the *Peterson* court. Accordingly, we believe that this case must be remanded to the circuit court to determine whether such a position actually exists. We believe there is insufficient evidence in the record to support the Board's finding that a light-duty position was actually available to plaintiff. In this regard, the Board's decision is against the manifest weight of the evidence.

692

For the above reasons, we reverse the decision of the circuit court of Lake County and remand the case to the circuit court for the purpose of ascertaining if a light-duty position is now available. The circuit court is directed that if a firm offer is made to plaintiff within a reasonable period of time of a position comparable in working conditions, compensation and tenure to the light-duty job previously assigned to him, the decision of the Board is to be upheld. The circuit court shall fix a reasonable period of time to determine if a position is or is not available. If the court finds that there is not such a position offered within a reasonable period of time, the court shall reverse the decision of the Board and enter the appropriate orders to effectuate the disability pension.

Reversed and remanded with directions.

DUNN and NASH, JJ., concur.