THE DEPARTMENT OF PUBLIC AID *ex rel.* NEIL F. HARTIGAN, Attorney General, Plaintiff-Appellant, v. IRVING HOKIN, Defendant-Appellee.

First District (4th Division)   No. 88—0287

Opinion filed October 13, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn Denney, Solicitor General, and John E. Huston and Karen Konieczny, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Hokin & Melber, of Chicago (Gary S. Hokin, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:
Plaintiff, the Attorney General of Illinois, by the relator, the Illi-

nois Department of Public Aid (the Department), brought an action in the circuit court of Cook County against defendant, Irving Hokin, D.D.S. Hokin provided dental services in the Medical Assistance Program, commonly known as Medicaid. Following an administrative hearing, the Department determined that it overpaid Hokin $18,103.58 for his services. In a final administrative decision, the Department terminated Hokin's eligibility to participate in the Medicaid program and declared that he owed the Department that amount.

The Attorney General sought the enforcement of the Department's decision demanding recoupment. The trial court ruled that the complaint failed to state a cause of action as a matter of law. The trial court subsequently, by agreement, dismissed the complaint with prejudice. The Attorney General appeals, contending that the trial court erred in dismissing the complaint.

We reverse the orders of the trial court and remand with directions.

BACKGROUND

■■ In determining whether to allow a motion to dismiss, a court must take all well-pled allegations of fact contained in the complaint, and in any attached exhibits incorporated into the complaint, as true and construe all reasonable inferences therefrom in the plaintiff's favor. *Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 836, 422 N.E.2d 86, 89.

The complaint alleged that Hokin provided dental services to Medicaid recipients, as provided by article V of the Illinois Public Aid Code, which the Department administers. (Ill. Rev. Stat. 1987, ch. 23, par. 5—1 *et seq.*) Between late September and early November of 1981, the Department audited Hokin's billings for services allegedly rendered to Medicaid recipients from September 1978 through December 1979. As a result of this audit, the Department determined initially that it overpaid Hokin $34,597.13. On or about July 27, 1983, the Department notified Hokin by mail that it intended to terminate Hokin's eligibility to participate in the Medicaid program and to recover the $34,597.13.

The Department scheduled an administrative hearing for August 17, 1983. Hokin appeared, but sought a continuance. The hearing officer granted him a continuance on that date and on five subsequent dates. On April 5, 1984, as a result of a reaudit, the Department amended its notice to Hokin, lowering the recoupment amount to $18,103.58. Hokin then withdrew his request for a hearing.

On April 11, 1984, the hearing officer declared Hokin in default under the Department's administrative rules. The hearing officer is-

sued a recommended decision that Hokin's eligibility to participate in the Medicaid program be terminated and that the Department recover from him $18,103.58. On April 27, 1984, the Department's Executive Deputy Director issued a final administrative decision. The Department's final decision adopted the hearing officer's recommendations. The Department terminated Hokin's eligibility to participate in the Medicaid program and declared that Hokin owed the Department $18,103.58.

On September 24, 1986, the Attorney General filed his complaint on behalf of the Department, pursuant to section 12—15 of the Public Aid Code. (Ill. Rev. Stat. 1987, ch. 23, par. 12—15.) He sought a judgment for $18,044.58, plus interest, attorney fees, and costs. Hokin moved to dismiss the complaint. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) He argued that the Public Aid Code does not authorize the Department to conclusively determine the amount of overpayments to a Medicaid provider and to enter an administrative order demanding repayment in the nature of a money judgment. Further, since the Department lacked the statutory authority to conclusively determine an overpayment, then its final administrative decision in his case was void and could be collaterally attached at any time.

Agreeing with Hokin, the trial court dismissed the complaint on August 12, 1987. The court ruled that, as a matter of law, the Public Aid Code did not authorize the Department to conclusively determine an amount owed by a Medicaid provider. The court further ruled that this administrative determination was not *res judicata*; the Department could not seek a judgment from a trial court based solely on its final administrative decision. The court allowed the Attorney General to replead, but the Attorney General chose to stand on the complaint. On December 18, 1987, by agreement, the court dismissed the complaint with prejudice. The Attorney General appeals.

OPINION

I

It is important to understand at the outset the procedural setting of this case. Hokin defaulted under the Department's rules. He contested neither the hearing officer's recommended decision nor the Department's final decision. Further, Hokin never filed a complaint for judicial review of the Department's decision.

▮ The Department punished Hokin under Public Aid Code section 12—4.25. Subsection (G) provides that the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*) shall apply to the

judicial review of all final administrative decisions under the section. (Ill. Rev. Stat. 1987, ch. 23, par. 12—4.25(G).) The Administrative Review Law bars the parties to an administrative proceeding from seeking judicial review of the agency decision, unless the review is sought within the time and manner provided in the act. It further provides that if an administrative decision has become final because of a party's default, then that decision shall not be subject to judicial review, except only for the purpose of attacking the agency's jurisdiction over the person or subject matter. (Ill. Rev. Stat. 1987, ch. 110, par. 3— 102.) Since the Administrative Review Law is a departure from the common law, a court must strictly adhere to its prescribed procedures. *Rosecky v. Department of Public Aid* (1987), 157 Ill. App. 3d 608, 614, 511 N.E.2d 167, 171.

■ The record shows that the trial court recognized these principles and correctly applied them to the instant case, thereby producing the exact issue on appeal. Since Hokin never filed a complaint for judicial review pursuant to the Administrative Review Law, the trial court lacked jurisdiction to review directly the Department's decision. Further, even if the trial court had jurisdiction over the cause, the decision was not subject to judicial review since the decision was made final due to Hokin's default. Hokin's only means of attacking the Department's decision was to collaterally attack the Department's jurisdiction over the person or subject matter. This brings us to the main issue: does section 12—4.25 of the Public Aid Code authorize the Department to conclusively determine the amount of overpayments to a Medicaid provider and to enter an administrative order in the nature of a money judgment?

## II

### A

■ A cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. In determining the legislative intent, a court should consider first the statutory language. When the statutory language is clear and unambiguous, the proper function of a court is to enforce the statute as enacted. However, when an ambiguity or uncertainty exists, a court may employ accepted rules of construction to ascertain the true meaning of the statute. *People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175; *Stewart v. Amoco Oil Co.* (1979), 72 Ill. App. 3d 330, 333, 389 N.E.2d 1323, 1326.

Section 12—4.25 of the Public Aid Code provides that the Depart-

ment may deny, suspend, or terminate the eligibility of any person to participate as a vendor in the Medicaid program if the Department finds, after reasonable notice and a hearing, any one of several listed offenses and conditions. (Ill. Rev. Stat. 1987, ch. 23, pars. 12—4.25(A), (B).) Subsection (E) of section 12—4.25 states:

"The Illinois Department may recover money improperly or erroneously paid, or overpayments, either by setoff, crediting against future billings or by requiring direct repayment to the Illinois Department." (Ill. Rev. Stat. 1987, ch. 23, par. 12—4.25(E).)

The section goes on to apply the Administrative Review Law to the judicial review of all final administrative decisions under the section. Ill. Rev. Stat. 1987, ch. 23, par. 12—4.25(G).

Section 12—15 of the Code, however, provides:

"Any person *** who, without intent to violate this Code, obtains benefits or payments under this Code to which he *** is not entitled, or in a greater amount than that to which he *** is entitled shall be liable for any excess benefits or payments received.

The Attorney General *** may initiate court proceedings to recover benefits or payments obtained under this Code to which a person *** is not entitled." Ill. Rev. Stat. 1987, ch. 23, par. 12—15.

■ We conclude that the plain language of the statute alone does not reveal the intent of the legislature. Although section 12—4.25(E) allows the Department to recover overpayments by requiring direct payment to the Department, that specific subsection is silent on the means that the Department may use to collect the amount. Further, section 12—15 allows the Attorney General to initiate court proceedings to recover overpayments. Thus, it is unclear from the plain language of the statute whether the legislature intended the Department to collect the overpayments through administrative decision, or intended the Attorney General to collect the overpayments through court proceedings. Since we cannot determine the intent of the legislature from the plain language of the statute, we must turn to accepted rules of statutory construction. See, *e.g.*, *People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175; *Stewart v. Amoco Oil Co.* (1979), 72 Ill. App. 3d 330, 333-34, 389 N.E.2d 1323, 1326-27.

B

■ A consideration of the legislative history is always proper in ascertaining the legislature's purpose and intent. It is proper also to

consider the occasion and necessity for the law, the previous condition of the law on the subject, and the defects, if any, in the former law which was intended to be remedied. Additionally, a court gathers the legislative intent not only from the language used, but also from the purposes attained by the legislation. *People ex rel. Carson v. Ring* (1968), 41 Ill. 2d 305, 310, 242 N.E.2d 267, 270.

Further, a court assumes that the legislature intended to enact an effective law. Therefore, a court should interpret a statute or provision so as to give it efficient operation and effect as a whole, if reasonably possible without doing violence to the language and spirit of the statute. A court should avoid an interpretation under which the statute or provision is defeated or "nullified, destroyed, emasculated, repealed, explained away, or rendered insignificant, meaningless, inoperative, or nugatory." *Pliakos v. Illinois Liquor Control Comm'n* (1957), 11 Ill. 2d 456, 459-60, 143 N.E.2d 47, 49.

Applying these principles to the instant case, we conclude that Hokin's contention cannot stand. Public Aid Code section 12—4.25 is the legislature's response to our supreme court's decision in *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223. In that case, the supreme court held that the Public Aid Code did not authorize the Department to terminate the eligibility of providers to participate in the Medicaid program. 68 Ill. 2d at 552, 370 N.E.2d at 229.

Hokin is correct that an administrative agency is a creature of statute. Therefore, any power that the agency claims must find its source in the statute that created the agency. (68 Ill. 2d at 551, 370 N.E.2d at 228.) An administrative agency has no inherent or common law powers; any order extending beyond its delegated authority is void. *Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 347, 365 N.E.2d 667, 671.

However, the legislature quickly responded to the *Bio-Medical Laboratories* decision by enacting several amendments to the Civil Administration Code and the Public Aid Code. Public Aid Code sections 5—9 and 12—4 were amended, and sections 12—4.25 through 12—4.27, 12—15, and 12—15.1 (subsequently repealed) were added. (1977 Ill. Laws 3645.) Specifically, the legislature expressly granted the Department the power to "recover money improperly or erroneously paid, or overpayments, either by setoff, crediting against future billings, or by requiring direct repayment to the Illinois Department." (Ill. Rev. Stat. 1987, ch. 23, par. 12—4.25(E).) In turn, the Department promulgated administrative rules to implement the legislative mandate. 89 Ill. Adm. Code 104.200 through 104.295 (1985).

■ An administrative agency may exercise not only the authority expressly conferred by a statute, but may also act according to that which, by fair implication and intendment, is incident to the express authority to accomplish the legislature's objective. Thus, an express legislative grant of power or authority to an administrative agency includes the grant of power to do all that is reasonably necessary to execute that power or authority. An administrative agency may validly exercise discretion to accomplish in detail what the legislature authorized in general terms. *Parliament Insurance Co.*, 50 Ill. App. 3d at 347-48, 365 N.E.2d at 671.

Furthermore, we have held specifically that the Department must be given wide latitude in exercising its discretion. It is not for a court to rewrite the Public Aid Code of the Department's regulations promulgated thereunder, where the Department's decision does not exceed the power granted to it. *Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 17-18, 418 N.E.2d 178, 185.

■ Additionally, this court has noted that money for public welfare programs such as Medicaid does not flow from an inexhaustible source. We stated:

"Construction of the Code's language must reflect this circumstance. Constriction of the discretion which is granted to [the Department] by statute to cope with these economic concerns, by means of an unnecessarily restrictive interpretation thereof, would in our view defeat rather than further the legislature's aim." (*Miller*, 94 Ill. App. 3d at 17, 418 N.E.2d at 184.)

Based on these principles, we conclude that the express grant of authority found in Public Aid Code section 12—4.25(E) includes the power to enter a conclusive administrative order for the amount of the overpayment.

The Public Aid Code, as amended, now provides the Department with a comprehensive statutory scheme to combat fraud or abuse by Medicaid providers. The Department can investigate, determine and punish such conduct. The punishment includes the suspension or termination of a provider's eligibility to participate in the Medicaid program and the recoupment of any overpayments made to the provider during his participation in the program. Oftentimes the punishment would include both sanctions, as in this case. We would not be giving Public Aid Code section 12—4.25 "efficient operation and effect as a whole" if we held that only that half of the Department's final decision terminating a provider from the program is a conclusive administrative determination, while the remaining half of the decision requiring repayment was not. See *Pliakos*, 11 Ill. 2d at 459-60, 143 N.E.2d at 49.

This interpretation of section 12—4.25 is also consistent with section 12—15. If the provider is recalcitrant in repaying the Department directly, section 12—15 allows the Attorney General to bring an action to enforce the Department's decision, as in this case. (Ill. Rev. Stat. 1987, ch. 23, par. 12—15.) We hold that section 12—4.25 of the Public Aid Code authorizes the Department to conclusively determine the amount of overpayments to a Medicaid provider and to enter an administrative order in the nature of a money judgment. Consequently, we further hold that the Attorney General's complaint in the case at bar states a cause of action.

### III

We now turn to the disposition of this cause. The trial court correctly observed that Hokin could argue only that the Department lacked the authority to enter its final administrative decision. We have rejected this argument.

The Administrative Review Law required Hokin to contest the Department's decision at the administrative hearing. He then could have sought judicial review of the Department's decision by following the procedures mandated in the Administrative Review Law. (See, *e.g., Boffa v. Department of Public Aid* (1988), 168 Ill. App. 3d 139, 522 N.E.2d 644; *Meyers v. Illinois Department of Public Aid* (1983), 114 Ill. App. 3d 288, 448 N.E.2d 1176.) Since Hokin did neither, the trial court must enter judgment for the Attorney General on behalf of the Department.

■ Additionally, the Attorney General sought damages of $18,044.58, plus interest, fees, and costs. However, the Department determined that Hokin owed it $18,103.58. The ascertainment and assessment of damages is a question of fact peculiarly within the province of the trier of fact. (*Werner's Furniture, Inc. v. Commercial Union Insurance Co.* (1976), 39 Ill. App. 3d 59, 70, 349 N.E.2d 616, 624.) Therefore, we remand the cause to the trial court for a determination of damages.

For the foregoing reasons, the orders of the circuit court of Cook County are reversed and the cause remanded with directions that the trial court enter judgment for the Attorney General, on behalf of the Department, and assess such damages as the court may determine to be just and proper.

Reversed and remanded with directions.

JIGANTI, P.J., and McMORROW, J., concur.