SECOND DIVISION
October 19, 2010

1-09-2214

No. 1-09-2214

MICHAEL SEGAL,                                    )  Appeal from the
                                                 )  Circuit Court of
            Plaintiff-Appellant,                 )  Cook County
                                                 )
v.                                               )
                                                 )
                                                 )
THE ILLINOIS DEPARTMENT OF INSURANCE, and        )
MICHAEL T. McRAITH, Director of THE ILLINOIS     )
DEPARTMENT OF INSURANCE,                         ))
                                                 ))  Honorable Nancy J.
            Defendants-Appellees.                    Arnold,
                                                     Judge Presiding.


            JUSTICE KARNEZIS delivered the opinion of the court:

            In this administrative review action, plaintiff Michael Segal appeals from a final

order on remand of The Illinois Department of Insurance (Department), and Michael T.

McRaith, Director of The Illinois Department of Insurance (Director), revoking his

insurance license and ordering him to pay a $100,000 civil penalty.  For the following

reasons, we affirm the judgment of the circuit court.

Background

In 2002, Segal and Near North Insurance Brokerage, Inc. (NNIB), were indicted by a federal grand jury and charged with 27 counts of racketeering, mail and wire fraud, false statements, embezzlement, and conspiring to impede the Internal Revenue Service. In June 2004, Segal was convicted, sentenced to over 10 years in federal prison and personally ordered to pay around $800,000 in restitution. Segal was also ordered to forfeit $30 million and required to give up his interest in NNIB. As a result, Segal was sent to a federal prison in Oxford, Wisconsin, where he currently resides.

On June 24, 2004, the then-Acting Director of the Department issued an order revoking both Segal's and NNIB's insurance licenses, assessing them a $1.5 million civil penalty, and ordering them to return over $1 million to certain consumers. The order was based on numerous violations of the Illinois Insurance Code (215 ILCS 5/1 *et seq*. (West 2004)) (Insurance Code). The order specified that the Department's investigation revealed numerous deficiencies in the premium fund trust account, which violated numerous sections of the Insurance Code as well as insurance law, allowing for the Director to revoke the licenses pursuant to section 500-70(a) of the Insurance Code (215 ILCS 5/500-70(a) (West 2004)). The order further provided that it would take effect in 30 days or would be stayed if within the 30-day period a written request for a hearing was filed with the Director.

Within 30 days of the revocation order, attorney Kirk H. Petersen requested a

hearing on behalf of Segal.[1]  The hearing was initially scheduled before a hearing officer on September 29, 2004, but was subsequently postponed.  Although the Director's order revoking Segal's license was stayed pending the requested hearing, Segal did not attempt to renew his license and it lapsed on February 1, 2005.  Thereafter, the parties conducted discovery and engaged in lengthy settlement negotiations, which ultimately failed to result in a settlement.  As a result, on February 26, 2007, the hearing officer issued an order rescheduling Segal's hearing for May 2, 2007.  The proof of service indicated that the order was "served upon the Attorneys of record or parties to the above cause by enclosing the same in an envelope sent and addressed to such attorneys or parties at their business address as disclosed by the pleadings of record herein."

On March 12, 2007, Segal's attorney sent a letter to Segal at Segal's prison address, notifying Segal of his intent to withdraw as counsel.  The letter is not part of the record on appeal.  Segal's attorney then filed a motion to withdraw with the Department on April 9, 2007, which was granted on April 11, 2007.  A copy of the motion to withdraw was also sent to Segal.  The motion does not reference the May 2, 2007, hearing date.  On April 12, 2007, the hearing officer sent Segal a letter notifying him that his attorney's motion to withdraw had been granted and that the hearing regarding the revocation order was scheduled for May 2, 2007.  Segal claims that he

_____

[1] NNIB was represented by separate counsel and was ultimately severed from the proceedings.

received the letter sometime after the hearing.

The hearing commenced on May 2, 2007. Before the proceedings began, the hearing officer noted that "Mr. Segal is not here, nor is a representative for Mr. Segal in the room." At the hearing, Brett Gerger, a representative from the Department, testified that he prepared a document on August 3, 2004, relating to the fine recommended to be imposed on Segal and NNIB based on the order of revocation. Gerger stated that he recommended a $1.5 million fine to the chief legal counsel for the Division of Insurance. The document was then admitted into evidence. Gerger testified that he was the lead examiner during the Department's investigation of Segal and NNIB, which led to the order of revocation. Gerger summarized the findings in the order of revocation, which related to the premium fund trust account being "out of trust," or short large amounts of money. He also stated that customers who had overpaid for insurance or were due a refund either never received a refund or did not receive it in a timely manner as provided in the Insurance Code. Gerger further testified that commission withdrawals and service fees were not done properly as provided in the Insurance Code. At the end of the hearing, the Department made a motion to find Segal in default pursuant to section 2402.200 of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code §2402.200) (Title 50 of the Administrative Code). The hearing officer granted the motion, finding Segal in default for failing to appear.

On June 12, 2007, new counsel for Segal, the law firm of Edward T. Joyce & Associates, P.C., contacted the Department to file an appearance on behalf of Segal.

On September 4, 2007, the hearing officer issued his "Findings of Fact, Conclusions of Law and Recommendations." The officer found that the Director had properly revoked Segal's insurance license pursuant to sections 500-70(a)(1), (a)(2), (a)(3), (a)(4) and (a)(8) of the Insurance Code (215 ILCS 5/500-70(a)(1), (a)(2), (a)(3), (a)(4) and (a)(8) (West 2006)), and had properly assessed Segal a $1.5 million fine for multiple violations of the Code. The officer recommended to the Director that the Director issue a final order revoking Segal's license and assessing Segal a civil penalty of $1.5 million.[2]

On September 17, 2007, the Director of the Department adopted the hearing officer's "Findings of Fact, Conclusions of Law and Recommendations." The Director ordered that Segal's license was revoked and assessed Segal a $1.5 million civil forfeiture for multiple violations of the Insurance Code. The order further provided that it was a final administrative decision pursuant to the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2006)) and appealable pursuant to the Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2006)).

On October 1, 2007, Segal filed a "motion for rehearing of, or to reopen, the May 2, 2007, hearing." Attached to the motion was an affidavit from Segal's new counsel alleging that Segal had not received notice of the May 2, 2007, hearing until after the hearing had occurred. The Department denied the motion on November 28, 2007.

_____

[2] Various documents refer to the $1.5 million as a "fine," "civil penalty," or "civil forfeiture."

Segal filed his complaint for administrative review on December 28, 2007. Attached to a memorandum Segal later filed with the court was an affidavit dated December 19, 2008, in which he averred that the mail at the prison could be slow to reach him and slow to send out. However, the affidavit contained no specific facts regarding receiving notice of the May 2, 2007, hearing. On February 20, 2009, the circuit court affirmed in part, holding that Segal had notice of the hearing because his attorney received notice and he was properly defaulted pursuant to section 2402.200 of Title 50 of the Administrative Code for failing to appear. The court did not reach the merits of Segal's argument that the Director's final order was against the manifest weight of the evidence, because it found that by reason of Segal's default, the allegations in the order of revocation went uncontested and justification for revocation existed. However, the court reversed in part, finding that the $1.5 million "penalty or civil forfeiture" was not authorized under the Insurance Code because the civil penalty authorized by the Insurance Code "may total no more than $100,000," citing section 500-70(d) of the Insurance Code (215 ILCS 500-70(d) (West 2008)). The court remanded the cause to the Department "for the purpose of assessing a civil penalty" within the parameters of section 500-70 of the Insurance Code.

On remand to the Department, the Director adopted a revised report and recommendation from the hearing officer on July 7, 2009, proposing that Segal pay a $100,000 civil penalty as authorized by section 500-70(d) of the Insurance Code. The Department's final order on remand affirmed the revocation of Segal's license and

assessed Segal a $100,000 civil penalty. On July 28, 2009, the circuit court issued an order stating that it reviewed the Director's final order on remand and found the matter to be "completed." Segal now appeals.

On appeal, Segal first contends that his due process rights were violated because he did not receive proper notice of the May 2, 2007, hearing or of his attorney's withdrawal, was not given an opportunity to appear at the hearing, and was improperly defaulted for failing to appear at the hearing pursuant to section 2402.200 of Title 50 of the Administrative Code.

Administrative hearings are governed by the fundamental principles and requirements of due process of law. Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 92 (1992). Notice and an opportunity to be heard are necessary principles of procedural due process. People ex rel. Illinois Commerce Comm'n v. Operator Communication, Inc., 281 Ill. App. 3d 297, 302 (1996). Notice must be reasonably calculated "'to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Hwang v. Department of Public Aid, 333 Ill. App. 3d 698, 707 (2002), quoting Stratton v. Wenona Community Unit District No. 1, 133 Ill. 2d 413, 432 (1990). The central question to consider is whether notice was adequate at the time that the notice was sent. Hwang, 333 Ill. App. 3d at 707. Due process is not satisfied if the notifying party knew or had reason to know that notice would be ineffective. Hwang, 333 Ill. App. 3d at 707. The issue of whether Segal received proper notice is a question of law, which we review de

*novo*.  Hwang, 333 Ill. App. 3d at 703.

Here, Segal's due process argument centers around his contention that he never received notice of the May 2, 2007, hearing until after the hearing occurred.  However, it is well settled that notice to an attorney constitutes notice to the client and knowledge of an attorney is knowledge of, or imputed to the client, notwithstanding whether the attorney has actually communicated such knowledge to the client.  See Eckel v. Bynum, 240 Ill. App. 3d 867, 875 (1992); Williams v. Dorsey, 273 Ill. App. 3d 893, 898 (1995).

Applying this principle, this court in Williams found that the defendants were properly debarred from rejecting an arbitration award for their failure to appear at an arbitration hearing.  The defendants argued that their attorney never gave them notice of the date of the arbitration hearing; however, this court found their argument to be "utterly without merit" because their attorney's knowledge of notice of the hearing was imputed to them.  Williams, 273 Ill. App. 3d at 898.

Similarly, here, Segal's attorney's knowledge of the hearing is imputed to Segal since Segal was represented by his attorney when the attorney received notice of the hearing.  Notwithstanding Segal's contention that he did not receive notice, Segal neither argues nor does the record indicate that his attorney did not receive notice of the hearing.  Notice to Segal's attorney constituted notice to Segal, regardless of whether his attorney actually communicated the notice to Segal.  We find it of no legal significance that Segal's attorney sought to withdraw after receiving notice, because it

was not, as Segal characterizes it, "on the eve" of the hearing. Segal's attorney sent Segal a letter of his intent to withdraw on March 12, 2007, and the Department granted his motion to withdraw on April 11, 2007, about two weeks before the hearing. The Department then sent Segal a letter notifying him that the motion to withdraw had been granted. All that due process required in this case was to provide notice of the hearing, which the Department did when it sent the notice to Segal's attorney. The notice was adequate at the time it was sent, and there is no evidence in the record that the Department knew or had reason to know that the notice was, as Segal claims, ineffective.

Furthermore, as the Department points out, Segal never specifically stated when he received any of the letters from his attorney or the Department. Segal's affidavit, which was not filed until December 2008, more than a year after the hearing, does not mention anything specific about receiving notice. The affidavit merely states general information about the mail procedures at the prison. Therefore, we find that Segal's due process rights were not violated under these circumstances.

Nevertheless, we do take this opportunity to comment on the Director's refusal to reopen the proceedings. Since Segal's motion for "rehearing of or to reopen the May 2, 2007 hearing" was in fact a motion to vacate a default judgment, the Director had considerable discretion. The Director chose not to allow Segal to have an opportunity for a true hearing notwithstanding the affidavit of Segal's new counsel that suggested that Segal never received actual notice of the May 2, 2007, hearing prior to its

9

commencement. We also note that when Segal's new counsel first contacted the Department to request a hearing, the report of the May 2, 2007 proceedings, including findings of fact and conclusions of law, had not yet been completed. The Department's ruling was not issued until nearly four months later. This delay suggests that had the Director chosen to do so, he could have allowed Segal an opportunity to be heard. However, in exercising his considerable discretion, the Director chose not to allow Segal that opportunity. While we acknowledge that the denial of Segal's motion was harsh, we cannot say that the Director's decision was an abuse of discretion such that no reasonable person would have made the same decision.

Next, Segal argues that the hearing officer's finding and recommendations, which provided the basis for the Director's final order on remand, are against the manifest weight of the evidence.

As the circuit court noted in its order disposing of Segal's complaint for administrative review, the allegations in the order of revocation went uncontested due to Segal being in default for failing to appear at the hearing.

Section 2402.200 of Title 50 of the Administrative Code provides:

"[f]ailure of a party to appear on the date set for hearing, or failure to proceed as ordered by the Hearing Officer, shall constitute a default. The Hearing Officer shall thereupon enter such Findings, Opinions, and Recommendations as is appropriate under the pleadings and such evidence as he shall receive into the record." 50 Ill. Adm. Code

10

§2402.200.

Section 3-102 of the Administrative Review Law further provides in part:

"[I]f under the terms of the Act governing the procedure before an administrative agency an administrative decision has become final because of the failure to file any document in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed by such Act, such decision shall not be subject to judicial review hereunder excepting only for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter." 735 ILCS 5/3-102 (West 2008).

In Department of Public Aid v. Hokin, 175 Ill. App. 3d 646 (1988), this court interpreted section 3-102 of the Administrative Review Law to provide that "if an administrative decision has become final because of a party's default, then that decision shall not be subject to judicial review, except only for the purpose of attacking the agency's jurisdiction over the person or subject matter." Hokin, 175 Ill. App. 3d at 650. In Hokin, the defendant, a dentist and provider of dental services to Medicaid recipients, failed to attend an administrative hearing regarding whether he had been overpaid for his services. The hearing proceeded in the defendant's absence and a final administrative decision by the Department of Public Aid was issued. The defendant subsequently never filed a complaint for judicial review of the decision. On appeal from the trial court's dismissal of the Attorney General's complaint seeking

enforcement of the Department of Public Aid's decision that the defendant had been overpaid, this court found that the defendant could not contest the merits of the decision because the decision was made final due to the defendant's default. Hokin, 175 Ill. App. 3d at 651.

This court also concluded in Hwang, that when an individual is defaulted, that individual is precluded on appeal from raising any issues other than notice. Hwang, 333 Ill. App. 3d at 708. In Hwang, the Department of Public Aid terminated the eligibility of the plaintiff, a doctor, to participate as a provider in the Medicaid program. The plaintiff neither requested a hearing regarding the Department of Public Aid's decision nor attended the hearing regarding the decision. The plaintiff was found to be in default and a final administrative decision was issued. The plaintiff filed for administrative review, and the circuit court upheld the Department of Public Aid's decision. On appeal to this court, we held that because the plaintiff's participation in the Medicaid program was terminated by default, he was precluded from raising any issues on appeal other than notice, citing to Hokin and section 3-102 of the Administrative Review Law. Hwang, 333 Ill. App. 3d at 708-09.

Here, as in Hokin and Hwang, Segal was found to be in default for failing to appear at the hearing, and pursuant to section 3-102 of the Administrative Review Law, he is precluded from raising any issue on appeal other than the Department's jurisdiction. As noted earlier in this opinion, we found the Department's notice to be sufficient. Therefore, we hold that because Segal was provided proper notice and was

defaulted, he cannot contest the hearing officer's findings that led to the Director's final order on remand.

Accordingly, we affirm the judgment of the circuit court, upholding the Director's final order on remand revoking Segal's insurance license and imposing a $100,000 civil penalty.

Affirmed.

THEIS, P.J., and CUNNINGHAM, J., concur.