SECOND DIVISION
MARCH 15, 2011

1-09-0238)
1-10-0505) Cons.

| | | |
|---|---|---|
| CHRIS NELSON, MIKE LUCKENBACH, and TONI S. DUNCAN, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| THE CHICAGO PARK DISTRICT, an Illinois Unit of Local Government; TIMOTHY J. MITCHELL, General Superintendent & Chief Executive Officer; DARLENE LESNIAK, Secretary; CHICAGO PARK DISTRICT COMMISSIONERS, President: GERY J. CHICO; Vice-President: BOB PICKENS; Commissioner: MARGARET T. BURROUGHS; Commissioner MARTIN LAIRD KOLDYKE; Commissioner DANIEL MATOS-REAL; Commissioner ROUHY J. SHALABI; THE LATIN SCHOOL OF CHICAGO, an Illinois Not-For-Profit Corporation; DONALD W. FIRKE, Head of School; SHELLEY GREENWOOD, Vice President, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 08 CH 35079  Honorable Nancy J. Arnold, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. Justices Karnezis and Connors concurred in the judgment and opinion.

This consolidated appeal arises from the January 22, 2009 order entered by the circuit court of Cook County dismissing with prejudice the instant taxpayers' lawsuit filed by the plaintiffs, Chris Nelson, Mike Luckenbach and Toni Duncan, and from the subsequent order of the circuit court, which imposed a $49,447.50 sanction, pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994), against the instant plaintiffs' attorneys. On appeal, the plaintiffs argue that: (1) *res judicata* did not bar their claims in the instant lawsuit; (2) the circuit court wrongly held that the terms of a settlement agreement in a separate, prior lawsuit, in which the plaintiffs were not involved, barred the instant lawsuit; and (3) the circuit court abused its discretion in imposing Rule 137 sanctions against

the plaintiffs' attorneys, and erred in denying the plaintiffs' motion to strike the sanctions; and the amount awarded was excessive. For the following reasons, we affirm the judgment of the circuit court of Cook County.

BACKGROUND

This case involves a complex procedural history and only the facts pertinent to our resolution of this matter are set forth below. For purposes of clarity, we characterize the litigation that underpins the issues before us as *Latin I* and *Latin II*. On April 16, 2008, Protect Our Parks, Inc. (POP), a community organization, along with three individual Chicago taxpayers, filed a lawsuit against the Latin School of Chicago (Latin School), the Chicago Park District (CPD), the City of Chicago, and various individuals affiliated with CPD and the City of Chicago. See Protect Our Parks, Inc. v. Latin School of Chicago, No. 08–CH–14027 (Cir. Ct. Cook Co.) (*Latin I*). The plaintiffs' complaint in *Latin I* sought a declaratory judgment regarding an agreement (South Field Agreement) between CPD and Latin School, which granted Latin School permission to fund and construct a soccer field in the "North Meadow of South Field" area of Lincoln Park in Chicago, in exchange for Latin School's priority usage of that soccer field. The *Latin I* complaint also sought to enjoin construction of the soccer field, alleging that the South Field Agreement violated the Lake Michigan and Chicago Lakefront Protection Ordinance (Chicago Municipal Code §16-4 (passed Oct. 24, 1973), the Illinois Constitution and the public trust doctrine. Attorney Herbert Caplan (Attorney Caplan), as a board member of POP, verified the *Latin I* complaint and served as co-counsel for the plaintiffs in *Latin I*.

On April 25, 2008, the trial court in *Latin I* entered a temporary restraining order (TRO)

2

against CPD and Latin School, ordering them to halt construction of the soccer field. On May 15, 2008, the *Latin I* parties entered into a settlement agreement, the terms of which stated that CPD would make a $40,000 payment to the plaintiffs and that the parties would release each other from liability. Specifically, the pertinent part of the settlement agreement stated:

"A. [The parties] absolutely, unconditionally and irrevocably release and discharge the other from any and all claims, demands, causes of action, proceedings, suits, liabilities, obligations, promises, covenants, conditions, agreements, undertakings, duties, debts and damages, known or unknown, direct or indirect, suspected or unsuspected, disclosed or undisclosed, arising under statute, regulation, ordinance, the United States and Illinois Constitutions, common law, or otherwise, which either [p]laintiffs or [d]efendants has previously had, now has or hereafter may have against the other arising out of or in connection with the [CPD's] December 1, 2006 agreement with the [Latin School] and the Latin Facility, as defined in the [p]laintiffs' [c]omplaint, and as alleged, or which should or could have been alleged in the lawsuit *Protect Our Parks, Inc., et al. v. The Latin School of Chicago, et al.,* Case No. 08 CH 14027, filed in the Circuit Court of Cook County, Illinois. ***

B. Notwithstanding anything to the contrary herein this general release shall not be applicable and shall not release any claims

3

demands, causes of action, proceedings, suits, liabilities, obligations, promises, covenants, conditions, agreements, undertakings, duties, debts and damages, known or unknown, direct or indirect, suspected or unsuspected, disclosed or undisclosed, arising under statute, regulation, ordinance, the United States and Illinois Constitutions, common law, or otherwise:

1. not arising out of or in connection with or related to the Litigation or the [CPD's] December 1, 2006 agreement with the [Latin School] and the Latin Facility, or;

2. between or among the [CPD] or its Commissioners, the [Latin School] and the City of Chicago."

The settlement agreement further stated that *Latin I* would be dismissed without prejudice upon execution of the agreement by the parties, and that it would be dismissed with prejudice "upon the execution by the Latin School and [CPD] of [a] *termination agreement,*" which would terminate the South Field Agreement. (Emphasis added.)

On that same day, May 15, 2008, the trial court approved the settlement agreement, and entered an agreed order dismissing *Latin I* without prejudice and stating that the case would be dismissed with prejudice contingent upon the execution of the termination agreement between CPD and Latin School.

On June 19, 2008, CPD and Latin School entered into a termination agreement as required by the terms of the May 15, 2008 settlement agreement and the trial court's order. The termination

4

agreement terminated the South Field Agreement between CPD and Latin School and provided that CPD would assume all of Latin School's remaining contracts relating to the construction of the soccer field and that CPD would reimburse Latin School for the construction work done under the terms of the South Field Agreement.

On June 24, 2008, the trial court in *Latin I*, noting that CPD and Latin School had entered into a termination agreement and that CPD had tendered $40,000 to the *Latin I* plaintiffs as required by the terms of the settlement agreement, entered an order dismissing *Latin I* with prejudice. The June 24, 2008 order also allowed the trial court to "retain jurisdiction for the sole purpose of enforcing this settlement agreement; provided, however, that the [c]ourt's jurisdiction shall cease upon the later of the [CPD's] determination of this matter after its receipt of the Chicago Plan Commission's recommendation, if any, *** or October 1, 2008."

In an e-mail dated July 8, 2008 from Attorney Caplan to Latin School and to the general superintendent of CPD, Timothy Mitchell (Mitchell), Attorney Caplan raised several objections to the language of the termination agreement. In particular, he objected to CPD's assumption of Latin School's remaining construction contracts and CPD's obligation to reimburse Latin School with "public moneys for the illegal soccer field construction." Attorney Caplan's e-mail further stated that he intended to raise these objections in "subsequent proceedings."

On August 29, 2008, Attorney Caplan, as co-counsel for the *Latin I* plaintiffs, filed an emergency motion to enforce the settlement agreement before the trial court (emergency motion to enforce), arguing that CPD violated the terms of the settlement agreement because it improperly removed a scoreboard from the construction site of the soccer field and arguing that a notice provided

5

by CPD regarding a September 3, 2008 public hearing about the soccer field at issue was inadequate. The emergency motion to enforce did not raise any of Attorney Caplan's objections to the terms of the termination agreement, which were expressed in his July 8, 2008 e-mail. Subsequently, the trial court denied the emergency motion to enforce.

On September 22, 2008, while the trial court in *Latin I* still retained jurisdiction over the enforcement of the settlement agreement, plaintiffs Chris Nelson, Mike Luckenbach and Toni Duncan filed the instant taxpayer lawsuit against CPD, Latin School, and various individuals affiliated with these two entities (*Latin II*). The complaint in *Latin II* alleged that the June 19, 2008 termination agreement, which brought *Latin I* to an end, was "void or voidable" because its terms provided that CPD agreed to use public funds "to reimburse Latin [School] $900,000 to $1.3 million" for the illegal construction of the soccer field. Further, the *Latin II* complaint alleged that CPD's assumption of Latin School's remaining construction contracts violated CPD and Illinois bidding requirements. Attorney Caplan also served as co-counsel for the *Latin II* plaintiffs.

On October 23, 2008, CPD and Latin School filed a joint motion to dismiss in *Latin II* (motion to dismiss) pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code), arguing, *inter alia*, that the *Latin II* lawsuit was barred by *res judicata* and by the release terms in the settlement agreement of *Latin I*. 735 ILCS 5/2-619.1 (West 2008).

On January 22, 2009, a hearing on CPD and Latin School's motion to dismiss was held. After hearing arguments by the parties, the trial court in *Latin II* granted the motion to dismiss under section 2-619 of the Code, holding that the matter was barred by *res judicata*. The trial court said in pertinent part:

"All the requisites of *res judicata* are present here. First, the taxpayers are in privity with one another. It's clearly stated in the complaint that was filed before [the trial court in *Latin I*] that the plaintiffs there were taxpayers as well as the group [POP], but they were individual taxpayers as well who were plaintiffs. And clearly, the case before me, [*Latin II*] case, the plaintiffs set themselves out as taxpayers. So the requirement of privity is established.

The second requirement is whether there is a final disposition of the merits. There certainly was a final disposition of the merits. It's in the June 24th, 2008 order of [the trial court in *Latin I*] in which [it] dismissed the case with prejudice. That's a final disposition on the merits.

And the third requisite is that the issues were or could have been raised in the same – in the case, in the earlier case, and that the case involves the same set of operative facts. That's also met clearly. The final disposition on the merits that occurred in [*Latin I*] was predicated expressly on the execution of the termination agreement, the very agreement that the plaintiffs in this suit now seek to declare as invalid."

In granting the motion to dismiss, the trial court further held that the instant lawsuit was barred by the release terms of the May 15, 2008 settlement agreement. The trial court also stated that it had

1-09-0238)
1-10-0505) Cons.

"no real reason to take up [CPD and Latin School's arguments] under 2-615." Nonetheless, the trial court noted that "two of the bases on which the plaintiffs purport to proceed here, two statutory bases, neither one of them apply. The municipal code [has] no application, which the plaintiffs concede; and the Illinois Park District Code, by its terms, does not seek to restrict the powers of [CPD] or any other park district which was previously formed under a special charter." The trial court then dismissed the entirety of the instant lawsuit–*Latin II*–with prejudice.

On that same day, January 22, 2009, the *Latin II* plaintiffs filed a notice of appeal before this court. On February 9, 2009, CPD filed a Rule 137 motion for sanctions (motion for sanctions) against the *Latin II* plaintiffs, arguing that the *Latin II* complaint was not well-founded in fact or law.

On February 17, 2009, the *Latin II* plaintiffs filed a motion to strike and dismiss (motion to strike), arguing that the Illinois Citizen Participation Act (735 ILCS 110/5 *et seq.* (West 2008)) barred CPD's Rule 137 motion for sanctions. On June 25, 2009, the trial court in *Latin II* denied the plaintiffs' motion to strike, finding that the Illinois Citizen Participation Act was inapplicable "to a Rule 137 motion."

On October 29, 2009, following a hearing on the motion for sanctions, the trial court found that Rule 137 sanctions were appropriate because the *Latin II* complaint was barred by *res judicata* and the release language of the settlement agreement and, thus, had no basis in law. Further, the trial court found that the *Latin II* plaintiffs made "deliberate mischaracterizations of the events from [*Latin I*]" in their response to CPD and Latin School's October 23, 2008 motion to dismiss. The trial court in *Latin II* then granted the motion for sanctions, imposing sanctions jointly and severally against the plaintiffs' attorneys:

8

> "[T]he [c]ourt finds the attorneys here should be sanctioned for filing this complaint and for mischaracterizations made in briefs defending the complaint against the motion to dismiss. The [c]ourt finds the attorneys should have known that this complaint was not well-grounded, in fact, it was not warranted by existing law. It was interposed for an improper purpose. And the pleading made no attempt at a good[-]faith argument for modification of existing law. The sanctions that will be imposed today will be only against the three attorneys [for the plaintiffs], who are *** [Attorney Caplan], Kenneth Goldstein, and Clinton Krislov and not against the parties themselves. The sanctions will consist of payment of [CPD's] attorneys' fees expended in this case."

The trial court then ordered CPD to submit an itemized petition for fees and costs.

On November 19, 2009, CPD submitted a petition for fees and costs (petition for fees) in the amount of $83,960.02. On November 23, 2009, the trial court in *Latin II*, upon finding certain questionable items on CPD's petition for fees, ordered CPD to submit a revised petition for fees and costs. On December 14, 2009, CPD submitted a revised petition for fees in the amount of $67,250. On January 8, 2010, the plaintiffs' attorneys filed a written response challenging CPD's revised petition for fees. On February 10, 2010, the trial court in *Latin II* awarded fees sanctions against the plaintiffs' attorneys in the amount of $49,447.50.

On February 17, 2010, the *Latin II* plaintiffs filed a notice of appeal before this court, seeking

reversal of the following trial court orders: (1) June 25, 2009 order denying the plaintiffs' motion to strike CPD's Rule 137 motion for sanctions; (2) October 29, 2009 order granting CPD's motion for sanctions; and (3) February 10, 2010 order awarding sanctions against the plaintiffs' attorneys in the amount of $49,447.50.

On March 29, 2010, the plaintiffs' attorneys tendered payment, in the amount of $49,447.50 to CPD, under protest and a reservation of rights. On March 31, 2010, this court granted the plaintiffs' motion to consolidate the two appeals–namely, the trial court's January 22, 2009 decision dismissing *Latin II* on the basis of *res judicata* and the trial court's February 10, 2010 order awarding fee sanctions against the plaintiffs' attorneys in the amount of $49,447.50.

ANALYSIS

We determine the following issues: (1) whether *res judicata* barred the *Latin II* plaintiffs' complaint; (2) whether the release terms of the settlement agreement barred the *Latin II* plaintiffs' complaint; and (3) whether the trial court abused its discretion in imposing Rule 137 sanctions against the plaintiffs' attorneys and erred in denying the plaintiffs' motion to strike the Rule 137 sanctions, and whether the amount awarded as sanctions was excessive.

We first determine whether *res judicata* barred the *Latin II* plaintiffs' complaint.

The plaintiffs in the instant lawsuit–*Latin II*–argue that *res judicata* did not bar the instant lawsuit because the terms of the settlement agreement did not bind anyone beyond the *Latin I* plaintiffs, and thus, the trial court's dismissal of the complaint violated their due process rights, as *Latin II* plaintiffs. Specifically, the plaintiffs argue that no privity existed between the *Latin I* plaintiffs and the *Latin II* plaintiffs and that no "identity of the causes of action" existed between the

10

claims alleged in *Latin I* and *Latin II* so as to satisfy the requirements of *res judicata*. Moreover, the plaintiffs contend that the trial court's broad application of *res judicata* violated public policy, which encourages citizens and organizations to participate freely in the process of government.

CPD and Latin School counter that the requirements of *res judicata* were satisfied and barred the instant lawsuit.

Initially, we note that the plaintiffs on appeal in *Latin II* improperly included arguments relating to the merits of their claims in *Latin II*. However, we decline to address the merits of the plaintiffs' claims because the sole inquiry before this court on this issue is whether the trial court properly dismissed *Latin II* on the bases of *res judicata* and the release terms of the settlement agreement entered into by the parties in *Latin I*.

A determination of whether a claim is barred under the doctrine of *res judicata* is a question of law, which we review *de novo*. *Arvia v. Madigan*, 209 Ill. 2d 520, 526, 809 N.E.2d 88, 93 (2004). Further, our review of a dismissal under section 2-619 of the Code is *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 236 (2006). The doctrine of *res judicata* provides that " 'a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action.' " *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467, 889 N.E.2d 210, 213 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334, 665 N.E.2d 1199, 1204 (1996)). "*Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided." *Id.* In order for *res judicata* to apply to bar a claim, three requirements must be satisfied: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) the parties or their privies are identical in both

11

actions; and (3) an identity of cause of action exists. *Id.*

In the instant case, *Latin II*, the plaintiffs' opening brief states generally that they "challenge all the requirements" of *res judicata* on appeal, but they only make substantive arguments challenging the second and third requirements of *res judicata*. Thus, any arguments purporting to challenge the first requirement of *res judicata*–relating to a final judgment on the merits–have been forfeited by the plaintiffs on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006)) ("[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Nonetheless, we find that the June 24, 2008 order entered by the trial court dismissing *Latin I* with prejudice upon the execution of the termination agreement was a final judgment on the merits that satisfied the first element of *res judicata*. See *Board of Education of Sunset Ridge School District No. 29 v. Village of Northbrook*, 295 Ill. App. 3d 909, 915, 692 N.E.2d 1278, 1283 (1998) (a dismissal of an action with prejudice constituted an adjudication of that action on the merits); see also *Keim v. Kalbfleisch*, 57 Ill. App. 3d 621, 624, 373 N.E.2d 565, 568 (1978) ("a dismissal 'with prejudice' is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication," and "the dismissal with prejudice of plaintiff's first complaint, pursuant to a settlement agreement, is a final judgment on the merits").

We find that the second requirement for *res judicata*–the parties or their privies are identical in both actions–was satisfied. On January 22, 2009, the trial court in *Latin II*, in granting CPD and Latin School's motion to dismiss, found that the individual taxpayer plaintiffs in *Latin I* were in privity with the taxpayer plaintiffs in *Latin II*. We agree.

Although the *Latin II* plaintiffs were not parties to the *Latin I* lawsuit, as Chicago taxpayers,

they were in privity with the individual *Latin I* plaintiffs, who were also Chicago taxpayers. A taxpayer action is defined as one that is:

"brought by private persons in their capacity as taxpayers, on behalf of themselves and as representatives of a class of taxpayers similarly situated within a taxing district or area, upon a ground which is common to all members of the class, and for the purpose of seeking relief from illegal or unauthorized acts of public bodies or public officials, which acts are injurious to their common interests as taxpayers." (Internal quotation marks omitted.) *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 493, 831 N.E.2d 544, 550 (2005).

"For purposes of *res judicata*, privity exists 'between parties who adequately represent the same legal interests.' " *Village of Northbrook*, 295 Ill. App. 3d at 918, 692 N.E.2d at 1285 (quoting *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916, 678 N.E.2d 308, 311 (1997)). Thus, the relevant inquiry is whether the interests of the *Latin II* plaintiffs were adequately represented in *Latin I*. See *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 559, 834 N.E.2d 468, 473 (2005).

We hold that the *Latin II* plaintiffs' interests in the instant case were adequately represented in *Latin I*. The *Latin II* plaintiffs' complaint specifically challenged the terms of the termination agreement allowing CPD to reimburse Latin School for costs associated with constructing the soccer field and to assume Latin School's remaining construction contracts, while the *Latin I* plaintiffs sought to halt construction of the soccer field under the terms of the South Field Agreement.

However, we find that the interests of the *Latin II* plaintiffs were the same as those represented in *Latin I* because the overriding concern in both cases was an unlawful transfer of public property to a private party–whether it be allowing Latin School to build on and acquire priority usage of public land; allowing public funds to be reimbursed to Latin School, a private entity; or diverting public funds to continue construction of the soccer field after allegedly violating public bidding requirements. Thus, we find that privity existed between the individual taxpayer plaintiffs in *Latin I* and the taxpayer plaintiffs in *Latin II*. Moreover, we find that privity existed between POP, the community organization plaintiff in *Latin I*, and the *Latin II* taxpayer plaintiffs, because their interests were also aligned. See *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 243 Ill. App. 3d 544, 551, 611 N.E.2d 1321, 1326 (1993) (taxpayers' interests were adequately represented by governmental and consumer groups). Thus, contrary to the plaintiffs' arguments, *Latin I* need not be certified as a class action in order for it to have a binding effect on the instant taxpayer plaintiffs in *Latin II*.

Nonetheless, the *Latin II* plaintiffs argue that they had no privity with the *Latin I* plaintiffs, and they cited *Taylor v. Sturgell*, 553 U.S. 880 (2008), *Richards v. Jefferson County, Alabama*, 517 U.S. 793 (1996), and *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160 (1999), for support.

We find the cases cited by the *Latin II* plaintiffs to be inapplicable to the facts of the instant case. In *Taylor*, the plaintiff, Brent Taylor (Taylor), brought a lawsuit under the Freedom of Information Act (FOIA) (5 U.S.C. §552(b)(4) (2006)) to seek records from the Federal Aviation Administration (FAA) pertaining to certain aircrafts. *Taylor*, 553 U.S. at 885. The trial court held that Taylor's lawsuit was precluded by a prior judgment against Taylor's friend, Greg Herrick

14

(Herrick), who had unsuccessfully sued the FAA for the same documents. *Id.* On appeal to the United States Supreme Court, the court rejected the doctrine of preclusion by "virtual representation," holding that the prior judgment against Herrick did not bar Taylor from maintaining his lawsuit because Herrick had not adequately represented Taylor in the prior lawsuit. *Id.* at 885, 905.

We find the facts in *Taylor* to be distinguishable from the instant case, where *Taylor*, unlike this case, was not a taxpayer's lawsuit being precluded by a prior judgment of a lawsuit brought by other taxpayers and where the interests of the *Latin II* plaintiffs here were adequately represented in *Latin I.* Likewise, we find *Richards* and *South Central Bell Telephone Co.* also to be distinguishable from the instant case. In those cases, the Supreme Court held that a prior taxpayer's lawsuit barred a later taxpayer's cause of action because there was no indication that the court in the first lawsuit had special procedures to safeguard the interests of the absent parties, or that the parties in the first lawsuit understood their lawsuit to be on behalf of absent parties. See *Richards*, 517 U.S. at 802; *South Central Bell Telephone Co.*, 526 U.S. at 168. Here, the trial court in *Latin I* specifically reviewed and approved the terms of the May 15, 2008 settlement agreement, and thus, we find that there was proper judicial oversight ensuring that the interests of the common taxpayers were adequately represented in *Latin I.* Therefore, we hold that privity existed between the *Latin I* plaintiffs and *Latin II* plaintiffs, and thus, the second requirement of *res judicata* was met.

The third element for *res judicata* requires that there must be an identity of cause of action.

The plaintiffs argue that there was no "identity of cause of action" because *Latin II* challenged CPD's reimbursement of public funds to Latin School and CPD's assumption of the remaining

15

construction contracts, which were unrelated to the halting of construction and Latin School's priority usage of the soccer field at issue in *Latin I*. They contend that the claims alleged here in *Latin II* could not have been brought in *Latin I*.

CPD and Latin School counter that the two lawsuits involved an identity of cause of action because they both arise from a single group of operative facts, the South Field Agreement, which was actually litigated in *Latin I*. Moreover, they argue that the June 19, 2008 termination agreement was an integral part of *Latin I* and, thus, was "indeed one of the then existing facts underlying the determination of *res judicata*."

Illinois has adopted the "transactional test" in determining whether an identity of cause of action exists for the purposes of *res judicata*. Pursuant to the transactional test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998). Further, "the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence [needed to sustain the second lawsuit that would have sustained the first lawsuit], so long as they arise from the same transaction." *Id.*

In the case at bar, the claims alleged in *Latin I* and *Latin II* arose from a single group of operative facts—namely, the contracting of the South Field Agreement between CPD and Latin School which provided for the building of a soccer field on public land. The allegations in the complaint of *Latin II* centered around the terms of the June 19, 2008 termination agreement, which arose solely from the single group of operative facts surrounding the construction of the soccer field as provided

16

by the South Field Agreement. The South Field Agreement was the subject of the allegations in *Latin I* by which the *Latin I* plaintiffs sought a TRO to halt construction. Further, the South Field Agreement, as CPD and Latin School noted, specifically contained terms relating to termination and reimbursement of construction expenses, albeit under different circumstances than occurred here–the very same issue alleged in the *Latin II*.

Moreover, we find that the allegations in *Latin II* regarding the issues of reimbursement of public funds to Latin School and CPD's assumption of the remaining construction contracts *could have been* litigated in *Latin I*. The record shows that on July 8, 2008, Attorney Caplan, as co-counsel to the *Latin I* plaintiffs, e-mailed both Latin School and Mitchell, the superintendent of CPD, regarding his objections to the language of the termination agreement. On August 29, 2008, while the trial court in *Latin I* still retained jurisdiction, Attorney Caplan filed an emergency motion to enforce before the court, in which he failed to allege any of his concerns about the termination agreement raised in his July 8, 2008 e-mail. Because an attorney's knowledge is imputed to his client, we find that Attorney Caplan's knowledge of the terms of the termination agreement on July 8, 2008 was imputed to his clients, the *Latin I* plaintiffs, by that date. See, *e.g.*, *Segal v. Department of Financial & Professional Regulation*, 404 Ill. App. 3d 998, 1002, 938 N.E.2d 192, 196 (2010) ("notice to an attorney constitutes notice to the client and knowledge of an attorney is knowledge of, or imputed to the client, notwithstanding whether the attorney has actually communicated such knowledge to the client"). We find that at the time of Attorney Caplan's August 29, 2008 emergency motion to enforce, the trial court in *Latin I* had retained jurisdiction to enforce the May 15, 2008 settlement agreement–which was contingent upon the execution of the June 19, 2008 termination

17

agreement. Thus, on August 29, 2008, the trial court in *Latin I* had jurisdiction to enforce both the settlement agreement and the termination agreement. Therefore, because the *Latin I* plaintiffs had knowledge of the terms of the termination agreement by July 8, 2008, at which time the trial court in *Latin I* retained jurisdiction to enforce both the settlement and termination agreements, we find that the claims alleged in *Latin II* could have been brought and litigated in *Latin I*. Accordingly, we hold that all three requirements have been satisfied and the *Latin II* complaint was barred by the doctrine of *res judicata* and properly dismissed.

Because we have determined that *res judicata* barred the instant action, we need not address whether the trial court erred in finding that the release terms of the settlement agreement also barred the claims alleged in *Latin II*.

We next determine whether the trial court erred in denying the plaintiffs' motion to strike CPD's Rule 137 motion for sanctions, abused its discretion in imposing Rule 137 sanctions against the plaintiffs' attorneys and whether the amount awarded as sanctions was excessive.

The plaintiffs argue that the trial court erred in denying their motion to strike CPD's Rule 137 motion for sanctions because the Citizen Participation Act (Act) (735 ILCS 110/5 *et seq.* (West 2008)) applies to bar the Rule 137 motion for sanctions. Specifically, they contend that a Rule 137 motion for sanctions is considered a "claim" within the meaning of the Act, and that a motion for sanctions is within the scope of the Act. The plaintiffs further maintain that the Act may be applied concurrently with Rule 137 without usurping judicial authority.

CPD counters that Rule 137 motions for sanctions "are not [lawsuits] brought to interfere with [the] valid exercise of constitutional rights," but rather, they "are the means by which our

18

Supreme Court prevents abuse of judicial process." CPD further argues that the application of the Act to a Rule 137 motion for sanctions would "result in an unconstitutional encroachment on the judiciary and a direct conflict with Rule 137 because it would undermine the judiciary's power to protect against abuse of its process." Thus, CPD contends, this would violate the separation of powers between the legislature and the judiciary. We agree.

The Act states in relevant part the following:

> "[T]he purpose of this Act [is] to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government; to protect and encourage public participation in government to the maximum extent permitted by law; to establish an efficient process for identification and adjudication of [Strategic Lawsuits Against Public Participation], and to provide for attorney's fees and costs to prevailing movants.
>
> * * *
>
> §15 *** This Act applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.
>
> Acts in furtherance of the constitutional rights to petition,

19

speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome."

735 ILCS 110/5, 15 (West 2008).

At the outset, we note that the plaintiffs made no mention of the Act in any of their initial pleadings before the trial court in *Latin II*. It was not until CPD filed a Rule 137 motion for sanctions against the plaintiffs that the plaintiffs responded by raising the issue of the Act as a defensive measure. We find that the Act was never intended to be used in this way. Further, we find that the trial court had discretion to impose and enforce our supreme court rules in denying the plaintiffs' motion to strike. See *Employer's Consortium, Inc. v. Aaron*, 298 Ill. App. 3d 187, 191, 698 N.E.2d 189, 193 (1998) ("[a] trial court has discretion to enforce supreme court rules and impose sanctions on the parties as appropriate and necessary to promote the unimpeded flow of litigation and maintain the integrity of our court system"). The plaintiffs' argument regarding the applicability of the Act in this case, taken to its logical extreme, would mean that under facts similar to those here, Rule 137 could never apply since an argument can always be made that a lawsuit was brought "in furtherance of the constitutional rights to petition, speech, association, and participation in government." That result would be, in essence, a violation of the separation of powers between the legislative and the judicial branches of government because the Act would allow the legislature to encroach upon the inherent powers of the judiciary to create its own rules to deal with matters within the court's authority. See *Kunkel v. Walton*, 179 Ill. 2d 519, 528, 689 N.E.2d 1047, 1051 (1997) ("separation of powers *** is violated when a legislative enactment unduly encroaches upon the inherent powers

20

1-09-0238)
1-10-0505) Cons.

of the judiciary, or directly or irreconcilably conflicts with a rule of this court on a matter within the court's authority"). As the trial court correctly stated in denying the *Latin II* plaintiffs' motion to strike CPD's Rule 137 motion for sanctions:

"It is clear *** that this [Act], if applied to grant immunity to plaintiff taxpayers from a Rule 137 motion, would be an impermissible usurpation of the legislature of the rule[-]making authority of the Supreme Court.

Supreme Court Rule 137 seeks to prevent abuse of process by penalizing vexatious unwarranted actions in accordance with the standards set out in that rule.

\* \* \*

A Rule 137 motion is by definition not a suit to interfere, *** not a suit to interfere with a valid exercise of a public right to petition and to speech.

The whole point of a Rule 137 motion is that the pleading to which it was addressed was not a valid exercise of a right to engage in the judicial process.

A pleading that a [c]ourt determines pursuant to Rule 137 is not well-grounded in law and fact is not a valid exercise of those rights.

Therefore, the [Act] cannot be interpreted to intend to

21

immunize any party, any suit from a Rule 137 motion.

Secondly, the legislature cannot provide immunity by any party or an attorney from compliance with Supreme Court rules, and the legislature is presumed to know that. Therefore, this [Act] cannot be interpreted to extend to motions brought pursuant to *** Rule 137."

Accordingly, we hold that the Act did not apply to bar CPD's Rule 137 motion for sanctions against the *Latin II* plaintiffs in this case and the trial court did not err in denying the plaintiffs' motion to strike CPD's motion for sanctions.

Next, the plaintiffs argue that the trial court erroneously imposed Rule 137 sanctions against their attorneys because "there was no basis in law" to hold that the *Latin II* complaint was barred by either *res judicata* or the release of the settlement agreement. The plaintiffs contend that they had a reasonable basis to bring the instant taxpayer lawsuit (*Latin II*), and thus, Rule 137 sanctions should not have been imposed.

CPD argues that the trial court did not abuse its discretion in sanctioning the plaintiffs' attorneys because the plaintiffs' complaint in *Latin II* was not well grounded in law and the plaintiffs' response to CPD and Latin School's motion to dismiss the *Latin II* complaint contained mischaracterizations of fact.

We review the trial court's imposition of Rule 137 sanctions under an abuse of discretion standard. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487, 693 N.E.2d 358, 372 (1998). An abuse of discretion occurs when "no reasonable person could have taken the view [the trial court] adopted." *Sterdjevich v. RMK Management Corp.*, 343 Ill. App. 3d 1, 19, 796 N.E.2d 1146, 1160-

61 (2003). "The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits." *Yunker v. Farmers Automobile Management Corp.*, 404 Ill. App. 3d 816, 824, 935 N.E.2d 630, 637 (2010). However, "[t]he rule is not intended to penalize litigants and their attorneys because they were zealous but unsuccessful in pursuing an action." *Id.* Further, Rule 137 requires that the trial court provide an explanation in imposing sanctions, and that a reviewing court may only affirm the imposition of sanctions on the grounds specified by the trial court. *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1045-46, 821 N.E.2d 340, 354 (2004). In reviewing the trial court's decision to impose sanctions, " 'the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts.' " *Sterdjevich*, 343 Ill. App. 3d at 19, 796 N.E.2d at 1161 (quoting *Technology Innovation Center, Inc., v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244, 732 N.E.2d 1129, 1134 (2000)(.

Rule 137 provides in pertinent part the following:

> "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name ***. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal or existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary

23

delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137 (eff. Feb. 1, 1994).

Here, on October 29, 2009, in imposing Rule 137 sanctions, the trial court held that the *Latin II* complaint was filed with no basis in law because it was barred by the doctrine of *res judicata* and by the release of the settlement agreement entered into by the plaintiffs in *Latin I*. The trial court noted that Attorney Caplan "actually drafted the settlement agreement in [*Latin I*]," and that he was both "the [p]laintiff and an attorney" in *Latin I*. The trial court cited *Marvel of Illinois, Inc. v. Marvel Contaminant Control Industries, Inc.*, 318 Ill. App. 3d 856, 744 N.E.2d 312 (2001), in holding that Rule 137 sanctions were proper because the "majority of the [plaintiffs'] response to [the motion to dismiss in *Latin II*] consisted of deliberate mischaracterization of the events from [*Latin I*]." In sum, the trial court concluded that the plaintiffs' attorneys should have known that the complaint in *Latin II* was not well grounded in fact or warranted by existing law, that it was interposed for an improper purpose and that the pleading made "no attempt at a good[-]faith argument for modification of existing law."

In the case at bar, the *Latin II* complaint named three individual plaintiff taxpayers who were not personally involved with the litigation of *Latin I*, nor were they signatories to the settlement agreement entered into among the *Latin I* plaintiffs and CPD and Latin School. However, the record shows that Attorney Caplan had served as co-counsel for the plaintiffs in both *Latin I* and *Latin II* and had verified the complaint in *Latin I*. As discussed, the issues raised in *Latin II* by the plaintiffs, through their attorneys, could have been raised before the trial court in *Latin I*. Had the plaintiffs' attorneys conducted a reasonable inquiry under Rule 137, they would have realized that the claims

24

in *Latin II* could have been brought in *Latin I*, while the trial court in *Latin I* retained jurisdiction over the enforcement of the settlement agreement, and consequently, there would not have been a reason to file the *Latin II* lawsuit after the fact. We have already found that the *Latin II* complaint was not well grounded in law because it was barred by *res judicata*. Therefore, it was not unreasonable for the trial court to find that the *Latin II* lawsuit was filed for an improper purpose under Rule 137.

The trial court, in imposing Rule 137 sanctions, also found, without specificity, that the plaintiffs' response to the motion to dismiss their complaint in *Latin II* consisted of "deliberate mischaracterization" of the events from *Latin I*. It is well established that the trial court's findings must be supported by the record. Accordingly, we find that, based on our review of the record, we cannot say that the trial court's ruling was unreasonable. While noting that the trial court did not elaborate beyond its comment that there were "deliberate mischaracterizations" in the plaintiffs' response to the motion to dismiss their complaint in *Latin II*, there is sufficient support in the record as a whole to support the trial court's imposition of sanctions. Therefore, we cannot say that no reasonable person could have taken the view adopted by the trial court, and thus, we reject the plaintiffs' argument that the trial court failed to make an informed decision regarding the basis upon which it imposed Rule 137 sanctions. Accordingly, we hold that the trial court did not abuse its discretion in granting CPD's Rule 137 motion for sanctions against the plaintiffs' attorneys.

Next, the plaintiffs argue that the amount of sanctions imposed against the plaintiffs' attorneys was excessive. The plaintiffs contend that the amount of $49,447.50 imposed as sanctions should be reduced "by eliminating inappropriate time [and] padded excess time." The plaintiffs make various arguments regarding the validity of the trial court's evaluation of the information upon which the

25

1-09-0238)
1-10-0505) Cons.

amount of sanctions is based.

CPD counters that the trial court did not abuse is discretion in the amount of sanctions awarded because the record shows that it had conducted a careful review of the billing records. We agree.

The standard of review in determining whether the amount of sanctions awarded was excessive is an abuse of discretion standard. See *Kellett v. Roberts*, 281 Ill. App. 3d 461, 466-67, 667 N.E.2d 558, 562 (1996). In the instant case, the record shows that the trial court, after granting CPD's motion for sanctions, ordered CPD to submit an itemized petition for fees and costs relating to work performed by its attorneys in the case. CPD submitted a petition for fees and costs (petition for fees) in the amount of $83,960.02. After reviewing the petition for fees, the trial court did not accept it and ordered CPD to submit a revised petition for fees. CPD submitted a revised petition for fees in the amount of $67,250. The plaintiffs' attorneys filed a written response challenging CPD's revised petition for fees. Following a hearing on the revised fee petition, the court said that it "went through these billings carefully" and that it "did not find anything that [it] would contest." The trial court remarked at the hearing:

> "Being familiar with the case and knowing what the arguments
> were, I find the fact that more than one lawyer had to work on this
> case not at all surprising and resulting in the fine work that I saw in
> front of me. I don't consider any of that to be over-billing. I think
> that's appropriate."

The trial court then awarded fees against the plaintiffs' attorneys in the amount of $49,447.50.

26

1-09-0238)
1-10-0505) Cons.

We find nothing in the record to support the view that the trial court acted unreasonably. Thus, we hold that the amount of sanction awarded was not excessive and the trial court did not abuse its discretion in determining the amount of sanctions awarded.

Nevertheless, the plaintiffs contend that the trial court's "lack of judicial temperament and open hostility" toward the plaintiffs' attorneys during the February 10, 2010 hearing on the issue of the petition for fees, as well as at subsequent March 2010 and May 2010 proceedings, support a finding of an abuse of discretion. We disagree.

The issues before this court in this case relate to *res judicata* in barring *Latin II* and to the issue of sanctions. As discussed, we are satisfied and the record supports that the trial court was thorough in its review of the fee petition submitted by CPD. The court's ruling was based on appropriate information and data which it reviewed before making a decision. Therefore, we need not address the plaintiffs' arguments relating to concerns outside the scope of our review on appeal, including the alleged conduct of the trial court in proceedings subsequent to those at issue here.

For the foregoing reasons, we affirm the judgment of the circuit court's January 22, 2009 order dismissing *Latin II* with prejudice, and affirm the judgment of the circuit court's June 25, 2009 order denying the plaintiffs' motion to strike, the circuit court's October 29, 2009 granting CPD's Rule 137 motion for sanctions, and the circuit court's February 10, 2010 order imposing $49,447.50 in fees as a sanction against the plaintiffs' attorneys.

Affirmed.